[Civ. No. 4005. Second Appellate District, Division Two.—July 27, 1925.]

## THE WEINBERG COMPANY (a Corporation), Respondent, v. ROSA HELLER, Appellant.

[1] CONTRACTS—DIVISION OF LITIGATION EXPENSES—ACTION TO RECOVER PROPORTIONATE PART—COSTS TO BE PRORATED.—Where two parties, a corporation and an individual, owners of separate tracts of land bordering upon a given river and who have been damaged by the diversion and overflow of waters of said river from and out of its natural course, enter into a written contract for the institution of proceedings to secure redress for the damage suffered, and to abate the nuisance, and they therein expressly promise to pay, in certain designated proportions, the costs and expenses incurred in the case instituted by the corporation, "including court costs, reporters' fees, jury fees, witness fees, and costs of appeal," and such case is tried and, on appeal, decided adversely to the corporation, the latter has a right of action upon the contract against said individual for the specified proportion of the costs and expenses incurred in connection with the trial and appeal; and the costs and expenses to be prorated are not limited to those incurred by their attorneys.

[2] ID.—ACCEPTANCE OF EMPLOYMENT BY ATTORNEYS—EFFECT ON CONTRACT.—Such contract having contained recitals of the conditions giving rise to certain anticipated litigation, then the terms upon

73 Cal. App.—49

which counsel should be employed, and then a provision, beginning with the words, "It is agreed," and which had to do with the payment of certain costs and expenses by the respective parties, and having been signed by both parties, the addition to such instrument of an acceptance of the terms of employment, signed by counsel, did not have the effect of altering it or changing its nature.

[3] ID.—REAPPORTIONMENT OF COSTS—PRIOR ORAL AGREEMENT—MERGER IN WRITING—FRAUD—MISTAKE.—In the absence of fraud or mistake, the prior oral agreement of the parties that the written contract should not be final, but subject to reapportionment at the end of the litigation in the ratio that the recoveries of the respective parties should bear to each share, was merged in subsequent written agreement, where that instrument clearly contemplated that the parties should pay in a specified ratio and contained no reference to reapportionment.

[4] ID.—UNAUTHORIZED EXECUTION—RATIFICATION BY CORPORATION.—Conceding that the individual who signed the corporate name to such agreement was not authorized to bind the corporation, the agreement could be ratified by a subsequent consent; and the act of the corporation in instituting an action to recover the proportionate part of the expenses agreed to be paid by the other party to the agreement was in itself a complete ratification of the agreement.

[5] ID.—ACCEPTANCE OF BENEFITS—EXPENDITURE OF MONEYS—ESTOPPEL.—Where said corporation, following the execution of the agreement, at once started suit, as did the other party to the agreement, in pursuance of the terms and conditions thereof, and expended moneys for the costs and expenses, thus performing the conditions, and accepting the benefits, of the agreement, it could not deny liability under the provisions of the contract which it had fully ratified.

[6] ID.—RECOVERY OF EXPENSES—ACTION UPON CONTRACT—CONTRIBUTION.—The lands of the parties to such agreement having been held in separate ownership, and there being no joint interest, or joint action, or community of interest in the result of any judgment intended, and the costs and expenses incurred by the corporation having been its own debt, and not the joint and several obligation of the parties, the remedy of the corporation was an action upon the contract for the agreed proportion of the costs and expenses incurred, and not an action for contribution.

3.  See 6 Cal Jur. 380; 10 R. C. L. 1016.
4.  See 6 Cal. Jur. 1120; 7 R. C. L. 662.
5.  See 6 Cal. Jur. 1127; 7 R. C. L. 665.

[7] ID.—RECOVERY OF EXPENSES INCURRED—PAYMENT UNNECESSARY.— The agreement of the parties having been that defendant would "advance and pay" her share of the costs and expenses incurred by plaintiff, defendant could not require proof of actual payment of the costs and expenses incurred by plaintiff before defendant should advance and pay her share thereof.

[8] ID. — RECIPROCAL OBLIGATIONS — CONSIDERATION. — The agreement having been reciprocal, each party agreeing to pay the specified proportionate part of the costs and expenses incurred in the proceeding instituted by the other, the promise of each was based upon a sufficient consideration; and it was immaterial that the unsuccessful termination of the proceeding instituted by plaintiff rendered inadvisable further prosecution of the proceeding instituted by defendant.

[9] ID.—ASCERTAINMENT OF COSTS—STATUTE OF LIMITATIONS.—The action to recover the agreed proportionate part of the costs and expenses incurred by the corporation having been commenced within about three months from the date of the decision on appeal reversing the judgment in its favor, and thus within about three months from the time the total costs and expenses were ascertained, it was not barred by the provisions of section 339 of the Code of Civil Procedure; furthermore, such action having been founded upon an obligation arising from an instrument in writing, said two-year statute was not applicable.

(1) 13 C. J., p. 552, n. 23.   (2) 13 C. J., p. 552, n. 23.   (3) 13 C. J., p. 597, n. 80.   (4) 14a C. J., p. 391, n. 61.   (5) 14a C. J., p. 389, n. 42.   (6) 13 C. J., p. 822, n. 17, 20.   (7) 1 C. J., p. 1151, n. 73; 13 C. J., p. 552, n. 23; 31 C. J., p. 410, n. 19, 20, 21, 24.   (8) 13 C. J., p. 328, n. 81, p. 329, n. 84 New, p. 552, n. 23.   (9) 37 C. J., p. 757, n. 48.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walton J. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

James, Pace & Smith for Appellant.

Fredericks & Hanna for Respondent.

CRAIG, J.,—The subject of this action consists of an alleged obligation of the appellant to pay one-half of all expenses incurred in the preparation, trial and appeal of a suit for injunction and damages, instituted by said corpora-

tion. A concise statement of the relations of the above-named parties, and the subject matter of the former suit, are best presented by the language of a contract in writing, denominated "Agreement of Employment," dated November 22, 1915, which forms the basis of this proceeding. We therefore quote therefrom the provisions which are essential to a determination of the questions here involved, as follows:

"That whereas the undersigned is interested in certain lands lying southeast of the Los Angeles River (also known as the San Gabriel River), within and near the limits of the city of Long Beach, all in the county of Los Angeles, . . . ;

"Whereas, the undersigned has sustained loss and damage to his said lands referred to above by reason of the diversion and overflow of waters of said river from and out of its natural course; and

"Whereas, the undersigned claims damages growing out of the same; and

"Whereas, the undersigned has determined to institute proceedings in court against the parties responsible for the diversion of said waters and for the recovery of damages therefor, and also to abate the nuisance as an incident to such action for damages, and to pursue any and all other necessary courses at law;

"Now, therefore, the undersigned hereby employs" (certain firms of lawyers named, for the purpose above specified, upon conditions and for a contingent compensation specified in detail).

"It is agreed, that the undersigned shall not be required to advance or pay any cost or expense incurred by said attorneys, except that the Weinberg Company, a corporation, shall advance and pay eight-fifteenths (8/15ths), and that Rosa Heller shall advance and pay seven-fifteenths (7/15ths) of all the costs of court incurred in this action, including court costs, reporters' fees, jury fees, and costs of appeal; and said Weinberg Company, a corporation, and *Rosa Heller shall pay* said amount in said portions *in each action of the Weinberg Company* against George Bixby or George Bixby and/or other defendants in the case of Rosa Heller against George Bixby or George Bixby and/or other defendants.

"It is agreed, that said attorneys shall commence action *or* actions to abate said nuisance and/or recover said damages as soon as reasonably possible after the signing of this agreement and shall prosecute said actions with reasonable diligence until they shall have been finally disposed of in *any court to which the same may be carried by any party thereto;* provided further that it shall be discretionary with the said attorneys whether or not they shall institute or conduct any proceedings on appeal on behalf of the undersigned in any action commenced herein.

✻    �ధ    ✻    ✻    ✤    ✻    ✿    ✿    ✿    ✻    ✻    ✻

"In witness whereof, the parties hereto set their hands and seals this 22nd day of November, 1915.

"(Signed)  THE WEINBERG Co.

"By I. WEINBERG, Pres.

"ROSA HELLER.

"We hereby accept the above terms of employment.

"(Signed)    VIETCH & RICHARDSON,

"ANDREWS, TOLAND & ANDREWS."

Thereafter an action was commenced by The Weinberg Company against the Pacific Electric Railway Company and others for the damages mentioned in the agreement, in the sum of $80,000, and a like suit was instituted in the name of Rosa Heller, against the same defendants, for damages in the sum of $70,000. After issue joined in each suit there was some discussion by the attorneys whom Weinberg and Mrs Heller had by said contract agreed to employ, with counsel for the defendants in said suits, and with the above-named contracting parties, plaintiff and respondent, and defendant and appellant herein, regarding efforts to persuade the defendants' counsel to consolidate them, and upon the advice of a civil engineer as to the expediency of trying the Weinberg case first, the latter was set for trial. It appears that Weinberg and Mrs. Heller were advised by their counsel that in the event of success in the trial of one case they could probably negotiate a settlement of the other, but failing in this they might more easily prosecute the same to judgment; that the Weinberg case was considered as involving all the facts, was the best case to try first, and a final decision therein would be determinative of the Heller case.

The action filed by the Weinberg Company was, therefore, by consent of all parties tried, and a judgment was rendered in the superior court in favor of the plaintiff therein against all the defendants except the Pacific Electric Railway Company, for the sum of $40,000 the railway company receiving a judgment against Weinberg for costs. Practically all the plaintiff's costs and expenses of the trial were paid by the respective parties to this appeal, in the proportions specified in said contract. Appeal from said judgment was thereupon taken to the supreme court by the defendants against whom it was rendered, and was reversed. (*Weinberg Co.* v. *Bixby,* 185 Cal. 87 [196 Pac. 25].) The action was not retried, nor was the case of *Heller* v. *Bixby et al.,* ever brought to trial.

Following said reversal Weinberg, acting on behalf of his corporation, demanded that Mrs. Heller pay the sum of $2,025.08, which was seven-fifteenths of the costs and expenses incurred upon appeal, including judgments for costs obtained by the several defendants, and a portion of the expenses of the original trial, which remained unpaid. Appellant declined to pay any portion of the amount demanded, and the respondent thereupon instituted this action, wherein he received a judgment for $1,979.75.

There is no dispute as to the parties having executed the agreement, nor that the costs and expenses were incurred as alleged in the complaint herein. A number of grounds have been advanced as a defense, however, principal of which are, (1) that there were no contractual obligations between The Weinberg Company and Rosa Heller; that the' signed agreement was no more than a simultaneous agreement to employ the same attorneys; that appellant did not agree to pay any costs except such as should be incurred by their attorneys; (2) that the sole consideration for the agreement as to any division of costs incurred by said attorneys was a further agreement that the two cases should be consolidated and tried together, and that the proportionate responsibilities of the plaintiffs therein were but tentatively fixed as a basis of the written contract of employment, and were subject to certain reapportionment at the termination of the litigation; (3) that since the cases were not consolidated, the defendant herein was relieved

from any obligation which she may have assumed as to payment of costs.

[1]   In the first place, we think appellant is incorrect in the contention that there was no contractual obligation between The Weinberg Company and Rosa Heller.   In this connection, appellant devotes quite extensive argument and quotation from authorities to an attempted application of well-established principles of law to a construction of the agreement which assumes that the transaction was a joint undertaking, for the prosecution of a single action, or the pursuit of a common cause.   She insists that she did not contract with Weinberg, but jointly with him employed the attorneys named, and that her legal obligation, if any, was only to pay them, and that if Weinberg may have paid the whole amount, he might seek a contribution, and hence that this action upon the conract is without foundation.

This position is novel, but not tenable.   Appellant signed the contract with Weinberg, expressly promising to pay seven-fifteenths of the costs and expenses *incurred* in the Weinberg case "including court costs, reporters' fees, jury fees, witness fees, and *costs of appeal.*"   The contract specifically fixes the proportion of all costs and expenses which Rosa Heller agreed to pay when incurred in the trial and appeal of the Weinberg case.   The costs and expenses were concededly incurred, and she paid her proportionate share of many items during the trial, which stamped the contract with her approval and partial performance, and when hope for success vanished she denied further liability for costs and expenses incurred, contending that Weinberg had agreed to have both cases tried together, and sought to vary the express provisions of the written instrument. It is not contended that fraud was practiced upon her, or that there was any mutual misunderstanding of the contract which would warrant its cancellation or modification; and it is plainly obvious that the instrument is silent as to consolidation.   It clearly provides that she shall pay seven-fifteenths of all court costs and expenses incurred in each case by said attorneys; the attorneys incurred costs and expenses in one case, the result of which obviated the necessity for further costs or expenses in the other case.   Separate suits are provided for by the contract, and the actions were in fact separately instituted. There is no claim that the interests of Weinberg and Mrs.

Heller were in common, nor was the same land affected; and it was not contemplated that either of the plaintiffs should share in the proceeds of any judgment which might be obtained by the other. **[2]** The contract outlined shows it to contain, first, a recital of the conditions giving rise to certain anticipated litigation; then, the terms upon which counsel shall be employed; and next, the provisions here in controversy, beginning with the words, "It is agreed," and which have to do with the payment of certain costs and expenses by the respective parties. The instrument is signed by both parties. Thereafter appears an acceptance of the terms of employment, signed by counsel. This addendum amounts to nothing more than an approval and consent on the part of counsel to act in accordance with the terms and provisions of the contract as agreed between the parties. Had this acceptance been omitted, appellant's construction of the contract would have been impossible. Yet, it cannot be said that this addition had the effect of altering the instrument and changing its nature.

**[3]** One of appellant's contentions is that the provision of the contract by which The Weinberg Company stipulated that it would pay eight-fifteenths, and Mrs. Heller agreed to pay seven-fifteenths, of the enumerated expenses incurred, was understood by the parties to furnish only a tentative arrangement and that the proportions to be borne by the parties were to be rearranged. The second answer of the defendant contained an allegation to this general effect, which the court found to be true. This allegation is that there was an express "understanding and agreement that such contract should not be final, but subject to reapportionment at the end of the litigation in the ratio that the recoveries of the respective parties should bear to each share." The obvious reply to this defense is that the contract clearly contemplated that the parties should pay in the ratio of eight-fifteenths and seven-fifteenths as expenses were incurred. It is immaterial that a further oral agreement for contingent reapportionment was made before the written agreement was executed. This instrument contains no reference to reapportionment. Appellant did not plead fraud or mistake. If there were any oral negotiations or understandings occurring previously to the execution of the writ-

ten instrument, they were merged therein. (Civ. Code, sec. 1625.)

[4] It is also asserted that the evidence failed to sustain the finding that Weinberg was authorized to bind the corporation, and that the plaintiff was not therefore obligated to appellant by such instrument, and the contract was not mutual, since had Mrs. Heller instituted an action against the corporation, it could have denied the authority of Weinberg to sign the name of The Weinberg Company. The citation of authority is hardly necessary to the disposal of this point in her argument. Section 1588 of the Civil Code provides that "A contract which is voidable solely for want of due consent may be ratified by a subsequent consent." The beginning of the present action was in itself a complete ratification of the contract which forms the basis of this controversy. [5] Again, section 1589 of the same code provides that "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known to the person accepting." The respondent corporation at once started suit, as did appellant, in pursuance of the terms and conditions of said contract; it expended moneys for the costs and expenses which are the subject of this action, thus performing the conditions, and accepting the benefits, of the agreement. It could not, therefore, have denied liability under the provisions of the contract which it had fully ratified by performance.

[6] In support of her claim that the facts furnished grounds for no other action than one of contribution, appellant cites authorities applying to facts constituting a combined interest of the parties to the litigation. *Huston* v. *Fisk*, 10 La. Ann. 769, is representative, and is decided upon sound principles of law, but it did not involve variant and several interests, or disunited properties. The plaintiffs and defendants were proprietors of a property from which they had been threatened with eviction; they agreed to contribute proportionately to their respective interests in *the* property, for the purpose of prosecuting *a* writ of error to the supreme court of the United States; it was agreed by the parties that a fund of $4,000 be thus provided, which the defendants failed to assist in assembling, for the defense of the litigation. The plaintiffs paid all of the expenses, and

sued the defendants for the proportionate share which they had agreed to pay. The supreme court of Louisiana, in affirming a judgment against the latter, said:

"They chose to employ other counsel than those already employed by all the proprietors, for the purpose of remedying the mischief occasioned by their own laches or bad faith. The payment of such counsel was their own affair. They might have paid their share when it was due, and gone to Mr. Pierce to prosecute their writ of error, without any additional expense. But because, by their own act, they incurred an additional charge, we cannot relieve them from their quota towards the expenses which accrued under the joint resolutions for the joint benefit, and of which the defendants have reaped the profits, in common with their co-proprietors."

The facts before us in the case at bar do not permit a holding that contribution would have been the appropriate action. A single writ of error, for the joint benefit of all the contracting parties, was contemplated in the case quoted, whereas in the instant case the parties contracted to commence and prosecute actions, not of coproprietors, co-owners, or coplaintiffs. There was no joint interest, or joint action, or community of interest in the result of any judgment intended. In *The Security Insurance Company* v. *St. Paul F. & M. Ins. Co.,* 50 Conn. 233, an agreement was signed by several insurance companies which created a *joint* liability, each agreeing to contribute in proportion to their respective interests for the defense of a claim for loss. They appointed a committee to manage the defense, with full power to incur all necessary expenses. The plaintiff, one of said companies, was afterwards sued by an employee of such committee, for his services in the original action, and recovered judgment for the full amount demanded. Said plaintiff thereupon brought suit against its co-contractors for contribution, and it was held that the latter, though not joined in the action of the employee, were at liberty to have joined in an effort to defeat it, had they seen fit to do so; but that the claim had been approved by the committee, and that the plaintiff could safely have paid it without waiting to be sued. It therefore at once becomes apparent that the employee could have prosecuted his action against either one or all of the contracting parties, whereas in the case at bar

Mrs. Heller, under her contract, was liable to no one but Weinberg for expenses incurred in prosecuting his action against Bixby et al. It was agreed that she should "advance and pay" her seven-fifteenths of the costs and expenses *incurred:* Weinberg incurred them, but she failed to pay her share. He testified that the reason for such provision was that he did not have the means with which to pay the entire expense contemplated when the agreement was made. The doctrine of contribution is not involved in the facts of this case. Plaintiff's right of action, if any it has, does not arise out of the theory of contribution, but is founded upon defendant's express contract to pay seven-fifteenths of the court costs and other expenses mentioned. It does not arise out of any implied contract, as in the case of contribution. If the corporation became individually liable for all of the court costs and expenses of the litigation, it is not because of any contractual obligation arising out of this contract. It is because, and only because, it was the sole party plaintiff and the sole losing party in the action in which the costs and expenses were incurred; that is, it was the sole losing party after the decision of the supreme court.

"A party to a joint, or joint and several obligation, who satisfies more than his share of the *claim against all,* may require a proportionate contribution from all the *parties joined with him.*" (Civ. Code, sec. 1432.) The obligation must be joint, or joint and several. In the contract under consideration there was no joint contract of Weinberg and Heller with anyone. If Weinberg and Mrs. Heller, jointly, or jointly and severally, had agreed with some third person to compensate him, each would then be liable to such party for the whole amount, and if one paid all, he might seek contribution from the other. The principle of equity on which the right of contribution is founded applies only where the parties are under a common burden of liability. Where the parties are severally bound for a specific portion of a debt, as principals, and one pays more than he is bound for, he is entitled to no contribution from the other for such excess. (13 Cor. Jur., p. 82, and cases cited in note 20, viz.: *Los Angeles Nat. Bank* v. *Vance,* 9 Cal. App. 57 [98 Pac. 58] ; *McArthur* v. *Board,* 119 Iowa, 562 [93 N. W. 580] ; *Briggs* v. *Barnett,* 108 Va. 404 [61 S. E. 797].)

[7] Nor could appellant require proof of actual payment by respondent before she should *"advance* and pay" her share; when the expense was incurred, Weinberg became liable therefor, and by the terms of the contract seven-fifteenths thereof then became due from the appellant. The legal definition of the term to "incur" has been announced in many decisions in various jurisdictions. The supreme court of Oklahoma, in *Bank* v. *Eckles,* 19 Okl. 159 [91 Pac. 695], said:

"The word 'incurred' is defined by Webster as 'to become liable for or subject to'; 'to render liable or subject to.' Black says: 'Men contract debts. They incur liabilities. In the one case, they act affirmatively; in the other, the liability is incurred or cast upon them by operation of law. "Incur" means something beyond contracts, something not embraced in the word "debt." ' In *Scott* v. *Tyler,* 14 Barb. (N. Y.) 202, 'incur' is held to mean 'to become liable for.' *Flanagan* v. *Baltimore & O. R. Co.,* 83 Iowa, 639 [50 N. W. 60] : 'To become liable for.' In *Beekman* v. *Van Dolsen,* 70 Hun, 288 [24 N. Y. Supp. 414] ; 'To become liable for.' In *Deyo* v. *Stewart,* 4 Denio (N. Y.), 101: 'Brought on himself.' In *Ashe* v. *Young,* 68 Tex. 123 [3 S. W. 454]: 'Brought on, occasioned, or caused.' "

*In re M'Elheny,* 91 App. Div. 131 [86 N. Y. Supp. 326], held that the provision, "The above note is left as collateral security for all liabilities incurred," should be construed as intending to cover an indebtedness brought into existence, and that "a lien attached in their favor . . . when such indebtedness existed and was due." And in *Beekman* v. *Van Dolsen,* 70 Hun, 288 [24 N. Y. Supp. 414], which involved a contract containing the provision: "We hold ourselves responsible for any cost or damage which may be incurred by said Van Dolsen in treating said Thompson according to law as a trespasser," it was said: "It is urged that the law is settled in this state that, where the guaranty is against any liability, then the costs and legal damages which may have been incurred may be recovered, but where the contract is a guaranty against damage or a guaranty against loss, actual damage or actual loss must be shown before a recovery can be had. But it seems to us that, applying the rule above claimed, the point urged is not well taken. The guaranty is not against damage which may be

suffered, but against cost and damage which may be incurred. 'Suffered' means 'paid,' 'incurred' means 'become liable for.' The language is, 'we hold ourselves responsible for costs and damages which may be incurred by said Van Dolsen,' not 'which he may suffer'; and the purport of the language is the same as though it read 'which he may become liable for,' because the incurring of a liability does not necessarily mean that such liability has been paid.''

Appellant makes the point in the instant case that, should she be held liable for her portion of the costs and expenses incurred by respondent, he had not actually paid a sufficient amount thereof at the time his suit was commenced against her to confer jurisdiction upon the superior court, and that his action was therefore premature. However, as indicated, the respondent incurred costs and expenses in fulfillment of his part of the contract; he brought them upon himself, and became liable for them, and at that moment appellant became liable under the express provisions of her contract for the portion which she agreed to pay *when incurred.* It was not contemplated by the parties, nor was it agreed, that appellant should be liable only after respondent could show actual payment which the contract was, in part at least, intended to avoid.

[8] An element of the defense which appellant contends establishes her right to a reversal upon this appeal is that there was no consideration for the promise which the respondent seeks to enforce. However, the Weinberg Company reciprocally obligated itself to pay eight-fifteenths of all costs and expenses which might be incurred in "the case of Rosa Heller against George Bixby or against George Bixby and/or other defendants." It appears that appellant's rights were adjudicated at about one-half the cost of litigating one of the cases, and that it was originally understood that a victory in one case would doubtless obviate the necessity for a trial of the other. Weinberg testified that his corporation could not have maintained the expense alone, and that such was not the intention of either party at the time the contract was signed; nor do we think the language of the instrument in question is susceptible of a construction which would require one of the parties to defray all the costs and expenses incurred in the trial and appeal of either case. The successful termination of one of the suits was not made

a contingency as to the obligation of the parties to the contract; and this being true, it cannot be said that an adverse decision would relieve them therefrom.

[9]   Again, it is contended that the action was barred by the provisions of section 339 of the Code of Civil Procedure, which requires that an action upon a contract, obligation or liability not founded upon an instrument in writing must be brought within two years.  This action being, as we have shown, founded upon an obligation arising from an instrument in writing, the point is not tenable.  *Weinberg* v. *Bixby, supra,* was reversed March 26, 1921, and the complaint herein was filed June 6, 1921, within about three months from the time the total costs and expenses were ascertained.

No other points appear worthy of discussion, and no error having been shown, the judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 24, 1925.