[Civ. No. 45069. First Dist., Div. Two. Feb. 26, 1980.]

BOARD OF EDUCATION OF THE SUNNYVALE
ELEMENTARY SCHOOL DISTRICT,
Plaintiff and Appellant, v.
COMMISSION ON PROFESSIONAL COMPETENCE et al.,
Defendants and Respondents;
VIDAL LUJAN, Real Party in Interest and Respondent.

COUNSEL

William E. Brown, Clifford D. Weiler and Brown & Conradi for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

Joseph G. Schumb, Jr., James E. Keller and La Croix & Schumb for Real Party in Interest and Respondent.

OPINION

LINDSAY, J.*—The Board of Education of the Sunnyvale Elementary School District (hereafter District) appeals from the judgment denying its petition for writ of mandate which sought to set aside a split decision of the Commission on Professional Competence of said District (hereafter Commission) reinstating real party in interest Lujan to his teaching position and awarding him costs and attorney's fees.

### Summary of Evidence

Vidal Lujan was a teacher of educable mentally retarded children in the Benner Intermediate School in Sunnyvale. He had been in the district for a number of years and enjoyed an excellent employment record as an exceptional, efficient and effective classroom teacher.

---

*Assigned by the Chairperson of the Judicial Council.

During a teachers' strike in October 1976, and while students at Benner were being taught by substitutes, Lujan called the Sunnyvale Public Safety Department and falsely reported that an explosive device had been secreted in the school. He made the call with an inchoate, emotionally founded, but irrational thought that a visual count of the students assembled outside the school would effectively challenge what he believed to be incorrect attendance figures announced by the District. He was persuaded in his own mind that bringing the *true* facts on attendance to the media, and thereby to the public, would help to shorten the strike by causing the District to negotiate more earnestly. As a result, an emergency fire evacuation of the building was conducted, and the educational process was disrupted for 20 minutes. Later the same morning the principal and vice principal identified Lujan's voice on a tape recording of the phone call. He was charged in a felony complaint, arrested and later entered a plea of nolo contendere to a misdemeanor charge of violation of Penal Code, section 148.1, subdivision (a) (false report of planting a bomb or other explosive). On January 7, 1977, he was sentenced, inter alia, to six months in county jail with the term suspended except for ten days, seven of which were served. Throughout this period from November 9, 1976, to January 14, 1977, excluding school holidays, Lujan continued to teach his regularly assigned classes. On this latter date he was suspended. During the whole period from arrest to suspension there was a great deal of publicity and notoriety surrounding Lujan. The District initiated proceedings pursuant to Education Code, section 13413 [44944],[1] seeking his discharge on the grounds of unprofessional and immoral conduct (§ 13403 [44932], subd. (a)) and unfitness for service (§ 13403, subd. (e)). The Commission, in a 2-1 decision, ordered that Lujan "shall be retained in his position as a permanent certificated employee...." The District petitioned the superior court for a writ of mandate. The court denied the writ and found, upon an independent review (§ 13414 [44945]), that Lujan's unfitness to teach was not demonstrated, ordered reinstatement, and awarded $7,232.64 in costs and attorney's fees.

On appeal the District argues that (1) the findings of the Commission and the trial court that Lujan was fit to serve as a teacher are not supported by substantial evidence; (2) the District's discharge of Lujan was justified as a matter of law because his conduct per se rendered him unfit to serve as a teacher; and (3) even if successful, Lujan is not

---

[1] All references are to the Education Code unless otherwise indicated. Citations to that code will initially include both the former and recodified section numbers.

entitled to an award of attorney's fees before the Commission, the superior court and on appeal.

### Sufficiency of the Evidence

■ Where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is any substantial evidence to support them. "...[T]he appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.*" (6 Witkin, Cal. Procedure, § 249, p. 4241.)

■ The applicable standard or determinative test in teacher discharge cases is whether the person is fit to teach. The terms "immoral" or "unprofessional conduct" have been held to be too vague, standing alone, and must be applied to a specific occupation and given context by reference to fitness for the performance of that occupation (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375]). Our high court in *Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691 [139 Cal.Rptr. 700, 566 P.2d 602], delineates the process to be considered in determining fitness. This opinion upheld the standard established in *Morrison* that a discharged teacher is entitled to a fitness hearing in which not only his conduct but also these factors are analyzed: (1) likelihood of recurrence of the questioned conduct; (2) the extenuating or aggravating circumstances, if any; (3) the effect of notoriety and publicity; (4) impairment of teachers and students relationships; (5) disruption of educational process; (6) motive; (7) proximity or remoteness in time of conduct.

The trial court considered each relevant factor and made findings, substantiating the Commission's conclusion that Lujan was fit to teach, including the following: he had an outstanding record; he had the continued support of community, teachers and students; he maintained good performance and control in the classroom after the incident; he remains an effective teacher; his effectiveness was not impaired in spite of extensive publicity; he is not a present threat of harm to students or fellow teachers; his continued presence in the school is not disruptive of the educational process; and the possibility of repetition is extremely remote.

In footnote 3, on page 698, of *Board of Education* v. *Jack M., supra,* 19 Cal.3d 691, the court stated that "fitness to teach is *probably* a

question of ultimate fact" (italics added). We determine, after a careful and diligent review of the record, that it contains substantial evidence to support the *ultimate* finding of the trier of fact that Lujan "shall be retained in his position as a permanent certificated employee...."

### Did the Act of Making a False Bomb Threat Constitute, Per Se, "Unfitness to Teach"?

Appellant's contention that the conduct was so shocking and outrageous that Lujan is unfit to teach as a matter of law similarly must fail. His act in making a false report that an explosive had been placed in the school was described during the proceedings below as follows: a) by the Commission majority as "immoral and unprofessional"—"totally unjustifiable, shameful and immoral"; b) by the Commission minority as "unprofessional conduct of the highest order"—"terrorist act"—"reprehensible"—"violation of the public trust and confidence"; c) by the trial court as "abhorrent and reprehensible"; d) by Lujan himself as "unjustifiable, shameful and immoral."

In *Eastern Associated Coal Co.* (1976) 66 Lab.Arb. 1063 (BNA Lab. Arbitration Rep.—Dispute Settlements) at page 1065, the decision of the arbitrator includes the following language: "We view the phoning in of bomb threats as one of the lowest forms of human activity, roughly equivalent to arson and rape. They are similar because in all three situations, an individual is willing to jeopardize the interests of others—perhaps even the lives of others—for his own immediate gratification."

We indorse the descriptions set forth above. However, it is clear that a trial court must conduct "a careful and reasoned inquiry into ...fitness to teach" (*Morrison* v. *State Board of Education, supra*, 1 Cal.3d at pp. 238-239) and base its decision on *all* of the evidence relating thereto, and may not consider a single act alone, reprehensible as it may be.

The appellant teacher in *Board of Education* v. *Jack M., supra*, 19 Cal.3d 691, was arrested for an alleged homosexual solicitation in a public restroom. No criminal charges were filed but the school board sought his discharge. Defendant testified and denied the acts charged, but the trial court accepted the arresting officer's version. In affirming the trial court's finding that the conduct did not demonstrate his unfit-

ness to teach per se, the Supreme Court instructed all courts that: "Proof of the commission of a criminal act does not alone demonstrate the unfitness of the teacher, but is simply one of the factors to be considered. [Citations.]" (P. 702, fn. 6; see also *Newland* v. *Board of Governors* (1977) 19 Cal.3d 705 [139 Cal.Rptr. 620, 566 P.2d 254], in which Newland was actually convicted of lewd conduct in a public place.)

We do not hold that those who disrupt the educational process by the making of a false bomb threat to one's school *must* be permitted to teach in the California public schools. Only that, reluctantly, under applicable appellate review standards and higher decisional authority, we are compelled to affirm the trial court's resolution of conflicting testimony on the issue of fitness in favor of real party in interest Lujan.

### Attorney Fees Incurred by Employee

The trial court, pursuant to its interpretation of section 13413 [44944], subdivision (e), awarded Lujan $7,232.64 in costs and attorney fees for the hearings before the Commission and the superior court. In addition, respondent Lujan now asks for attorney fees on appeal.

Government Code, section 800, states in pertinent part: "In any civil action to...review the...determination of any administrative proceeding...where it is shown that the...determination of such proceeding was the result of arbitrary or capricious action...the complainant if he prevails in the civil action may collect reasonable attorney's fees, but not to exceed one thousand five hundred dollars...." The District contends that these proceedings are controlled by Government Code, section 800, and therefore Lujan is not entitled to any fees; or, alternatively, that even if section 13413 [44944], subdivision (e) applies, it is limited by Government Code, section 800, to an award not in excess of $1,500.

■ We hold that the issue with respect to attorney fees in certificated employee dismissal proceedings by a school district (ch. 4, pt. 25, div. 3, tit. 2, of the Ed. Code) is not governed by Government Code, section 800, but rather in toto by section 13413. This latter section, establishing guidelines for the conduct of dismissal hearings, specifically sets forth in subdivision (e) the conditions upon which attorney fees are to be paid. It provides in pertinent part: "If the governing board orders that the employee not be dismissed, the governing board shall pay all

expenses of the hearing, including...reasonable attorney fees incurred by the employee."

Education Code, section 2, provides: "The code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to effect its objects and to promote justice."

In addition, it is well settled that when a special and a general statute are in conflict, the former controls (*Agriculture Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687]; Code Civ. Proc., § 1859).

The entitlement to fees herein turns on the meaning of the word "incurred" in the phrase "reasonable attorney fees incurred by the employee." (§ 13413 [44944], subd. (e).) The record on appeal forwarded from the trial court was insufficient and inconclusive with respect to the facts surrounding the award of attorney fees. At oral argument before this court respondent Lujan stipulated that: he was not billed for services; he did not pay any of the fee; the California Teachers' Association selected counsel to represent him during the proceedings (exclusive of the criminal phase); counsel was paid by the California Teachers' Association; and, part of the "benefit package" to which he was entitled as a result of the payment of dues to that association was legal services in proceedings such as these.

Webster's Third New International Dictionary (1971) defines "incur" as "to render liable or subject to." (5) It seems well fixed and delineated in the case law that "incurred" means "to become liable for" as distinguished from actually "pay for." (*Weinberg Co.* v. *Heller* (1925) 73 Cal.App. 769, 780 [239 P. 358]; *Hertzka & Knowles* v. *Salter* (1970) 6 Cal.App.3d 325, 332 [86 Cal.Rptr. 23]; *County of Kings* v. *Scott* (1961) 190 Cal.App.2d 218 [11 Cal.Rptr. 893]; *Hermitage Health and Life Insurance Co.* v. *Cagle* (1967) 57 Tenn.App. 507 [420 S.W.2d 591]; *Collins* v. *Farmers Insurance Exchange* (1965) 271 Minn. 239 [135 N.W.2d 503].) The United States Court of Claims was faced with the interpretation of the word "incurred" in *Quarles Petroleum Company Inc.* v. *United States* (1977) 551 F.2d 1201. Corporate owners of a tank truck which overturned, spilling 6,500 gallons of fuel oil, brought action under the Federal Water Pollution Control Act (33 U.S.C. § 1321(i)(1), supp. V 1975), for and on behalf of their insurance carrier, as subrogee, to recover costs allegedly incurred in cleaning

up an oil spill. The court held that though the owners' action was for the use and benefit of their insurance carrier, they were nevertheless entitled to recover for and on behalf of their insurance carrier the reasonable costs they incurred in removing oil which was discharged into navigable waters of the United States solely by reason of the act or omission of a third party. At page 1205, the opinion concluded: "Section 1321(i)(1) speaks in terms of the owner-operator recovering from the United States 'the reasonable costs *incurred* in such removal.' To incur means to become liable for or subject to; it does not mean to actually pay for. . . . The fact that the plaintiffs were insured and that the plaintiffs' insurer paid out the total cost of the clean up operations is immaterial under § 1321. In our opinion, the plaintiffs. . . satisfy the statutory requirements of § 1321(i)(1)."

We think that this construction is also the more reasonable interpretation as we consider the language and purpose of section 13413 [44944]. This section of the Education Code serves to enable a teacher to protect his or her job and to "make whole" the successful litigant. Normally, to effectively defend against a notice of intention to dismiss, legal counsel must be employed and the client must make provision to pay for the services rendered. One thereby incurs an obligation and is liable, for its discharge. The ultimate source of the funds utilized to pay the attorney for a successful aggrieved employee is immaterial. It is of no essential consequence whether the employee paid from his own available funds or his family, friends, benefactor, insurance company, or teachers' association came to his rescue.

The District concedes that if a dismissed teacher pays attorney fees from his own funds he should be reimbursed. It argues, however, that if the teacher is represented by counsel provided by the California Teachers' Association, reimbursement is not required. The statute should not be interpreted to reach this inequitable result. It would be wrong to permit the District to benefit from such a windfall and avoid payment because the teacher had the foresight to provide himself with "future" legal counsel through payment of dues to the California Teachers' Association. The teacher-member hopes he will never be required to utilize the attorney he voluntarily pays for just as one who bears the costs of fire insurance premiums trusts he will never be forced to collect on the policy. In both situations the party has paid in advance for later benefits if needed. The successful teacher in a dismissal contest who was a member of the California Teachers' Association would be in a position inferior to a person not a member, because that part of his dues appor-

tioned to the "legal fund" would afford no benefit. Only the unsuccessful teacher who was a member would have a superior position, since his attorney fees would be paid for him.

In our opinion, respondent Lujan satisfied the statutory requirements of section 13413 [44944], subdivision (e), in that he "incurred" legal fees in contesting his dismissal. The responsibility of the District is to pay the reasonable attorney fees unreduced as a result of a collateral transaction.

### Fees at the Commission Hearing

The explicit wording of section 13413 [44944], subdivision (e), provides recovery by the teacher of all expenses of the Commission hearing, including attorney fees, when, as here, the governing board orders[2] that the employee not be dismissed.

### Fees in the Superior Court

*De Groat* v. *Newark Unified School Dist.* (1976) 62 Cal.App.3d 538 [133 Cal.Rptr. 225] is sufficient answer to the District's attack on the award of attorney fees for the writ hearing in the superior court. In *De Groat* it was held that where a teacher, dismissed by a commission on professional competence for unfitness for service, sought judicial review under section 13414 [44945] and obtained a writ of mandate compelling his retention, he was entitled under subdivision (e) of section 13413 to an award of attorney fees at the superior court level. The District suggests in its brief that *De Groat* "is with all due respect, incorrect." Not so. We endorse its reasoning and its holding. At page 542, the court stated: "Although section 13413 does not specifically refer to attorney fees upon a judicial review of the administrative action dismissing the employee, the effect of annulment of that administrative action by means of a writ of mandate is to compel the school governing board to order that the employee not be dismissed. Therefore, an award of attorney's fees is within the literal terms of the statute where the employee prevails and obtains a writ of mandate directing reinstatement."

█ We therefore conclude that if one teacher, who, having prevailed before the superior court alone, is granted attorney fees, then with

---

[2]"The decision of the Commission on Professional Competence shall be deemed to be the final decision of the governing board." (§ 13413 [44944], subd. (c)[(2)].)

greater logical necessity the teacher, as in our case, prevailing at both levels is entitled to such fees.

### Fees at the Appellate Level

We also construe the statute to extend to the appellate level. A successful teacher-dismissant is entitled to recover attorney fees at all stages of the litigation process. It is appropriate under the legislative intent expressed in the statute, inasmuch as it is never determined whether the employee is in fact to be retained until the final appeal is exhausted.

The judgment is affirmed; respondent to receive costs on appeal. However, the cause is returned to the trial court for further proceedings to determine the reasonable attorney fees incurred by real party in interest Lujan for judicial review by this court.

Taylor, P. J., concurred.

ROUSE, J.—I concur. Lest there be any question, I emphasize that my concurrence in this decision is compelled by applicable standards of review. In my opinion, the conduct involved was reprehensible and raises a serious doubt in my mind concerning Mr. Lujan's fitness to teach in our public schools.

A petition for a rehearing was denied March 27, 1980, and appellant's petition for a hearing by the Supreme Court was denied April 24, 1980.