[Civ. No. 6216.   Third Appellate District.—June 27, 1939.]

GRANT MEMORIAL PARK, INC. (a Corporation), Plaintiff and Respondent, v. ROBLA SCHOOL DISTRICT, Defendant and Respondent; THOMAS MILLER et al., Appellants.

Johnson & Curtright, P. H. Johnson and C. K. Curtright for Appellants.

Ralph H. Lewis and Robert H. Schwab for Plaintiff and Respondent.

Otis D. Babcock, District Attorney, and William A. Green, Assistant District Attorney, for Defendant and Respondent.

THOMPSON, J.—The appellant, Thomas Miller, appeared for himself and other property owners of a subdivided tract and was permitted to file in this suit to quiet title a complaint in intervention asking for declaratory relief under section 1060 of the Code of Civil Procedure, and an injunction to prohibit the plaintiff and defendant from using their prop-

erties for cemetery purposes contrary to an alleged covenant running with the land. The intervener sought to restrict the plaintiff and defendant, for the benefit of the entire tract, to a decree quieting title to their lots *subject to the covenant* prohibiting its use for cemetery purposes. A demurrer to that complaint was filed on the ground that it fails to state facts sufficient to constitute a cause of action. The demurrer was sustained without leave to amend. No application to amend the pleading was requested. Judgment was thereupon rendered against the interveners. From that judgment this appeal was perfected.

The complaint alleges that plaintiff is the owner of lots 2, 15 and 16 of a subdivision of section 11 of Rancho Del Paso in Sacramento County to which lots it seeks to quiet title. The intervener alleges he is the owner of lot 46 of that same tract; that the deed by means of which he acquired title to his lot contains a covenant "running with the land", which prohibits the use of his lot for the purpose of maintaining or operating a cemetery or mausoleum thereon; that the defendant has "attempted to acquire" lots 2, 15 and 16 of that tract which are subject to the same covenant for the purpose of maintaining and operating a cemetery and mausoleum thereon; that the Sacramento Valley Colonization Company, a corporation, formerly owned the entire Rancho Del Paso, including the lots of both the plaintiff and the intervener; that said former owner in accordance with a general residential plan of subdivision agreed with all grantees, "by covenants running with the land and made a part of each and every deed conveying a lot or lots in said tract, that the lot or lots thereby conveyed should not be used for cemetery . . . purposes"; that all the lots which were thereafter conveyed contained a similar restrictive clause, and provided that in the event of a breach thereof the title should immediately revert "to the said Robla School District"; that the restrictive clauses in the various deeds of conveyances were "intended to be, and were expressly declared to be, covenants running with the land, and the same were made and entered into for the benefit of all the lots contained in said tract and for the benefit of all the respective owners thereof". While it is alleged the restrictions were *intended* "for the benefit of all the lots contained in said tract", that statement is a mere conclusion, for it is not asserted the declaration to that ef-

fect was contained in the deeds. The complaint fails to state what document or person "expressly declared" that the covenant was for the benefit of all lots of the tract. The complaint in intervention sets out neither the language of the covenants nor the deeds or contract in which the covenants are asserted to have been contained. We are therefore compelled to rely on the conclusions of the pleader in determining the effect and extent to which the restrictions are presumed to apply.

The respondent insists that the complaint in intervention fails to state facts sufficient to constitute a cause of action for the reason that the allegations of the pleading do not create a servitude upon the demised lots of the entire tract because the restricting covenant applies only to *grantees* thereof and does not mention the portion of the dominant tenement or other lots to which it is alleged to apply; that the appellant waived his right of appeal by consenting to the rendering of judgment against him, and that his statement of the question involved on appeal, which appears on the first page of the opening brief, does not comply with the requirements of rule VIII, section 2, of Rules for the Supreme Court and District Courts of Appeal.

The question printed on the first page of the appellants' opening brief gives no intimation of the real issue to be determined. It merely asserts that the problem for determination is whether the complaint in intervention states facts sufficient to constitute a cause of action. This is not a compliance with the evident purpose of rule VIII, section 2, of the Rules for the Supreme Court and the District Courts of Appeal. However, it has been held that courts may disregard that rule when its enforcement would result in injustice. (*Connell* v. *Higgins*, 170 Cal. 541 [150 Pac. 769].) We are disposed to waive the deficiency of the printed statement of the question to be determined on appeal.

Nor do we think the appellant waived his right of appeal by consenting to the entry of judgment against him. All that appears in the record to support the contention that the appellant consented to judgment against him is the formal recitation in the judgment that "on motion of *the parties hereto* and by reason of the law and the premises, it is ordered, adjudged and decreed", etc. In view of the fact that the intervener filed an amended pleading; that his attorney

was present in court when the demurrer to his amended complaint was presented, and submitted the matter to the court for decision without making any concession, we assume the term "parties" as it appears in the judgment was inadvertently used and refers only to the parties to the action, other than the intervener. It is true that an appellate court will not review a judgment at the instance of a party who has formally consented to its rendition. (*Mecham* v. *McKay,* 37 Cal. 154; *Hood* v. *Verdugo Lumber Co.,* 219 Cal. 558 [27 Pac. (2d) 897]; *Adams* v. *Southern Pac. Co.,* 109 Cal. App. 728 [293 Pac. 681]; *People* v. *Aymar,* 98 Cal. App. 1 [276 Pac. 595]; 3 C. J. 671, sec. 546.) Having submitted the demurrer to the court in good faith, and having promptly perfected his appeal from the judgment which was rendered, we assume he did not intend to concede that the judgment should be entered against him. Neither the conduct nor the declarations of the intervener indicate that he intended to consent to the rendering of judgment against him. The record refutes that theory. The mere consent to the entry of judgment as a formal matter of procedure after an issue has been regularly determined against a party to an action does not constitute such acquiescence as will deprive him of the right of appeal. It is said in 4 Corpus Juris Secundum, page 408, section 213c, in that regard:

"Procurement or preparation of the mere formal entry of a judgment, order or decree in conformity with a previous finding or decision, is not such consent as will prevent an appeal therefrom."

Assuming, without so deciding, that under facts similar to those which the appellant has attempted to recite in the present action, he may be permitted to intervene under section 387 of the Code of Civil Procedure in an ordinary suit to quiet title to real property, we are, nevertheless, satisfied he has utterly failed to allege facts sufficient to constitute a cause of action.

It is true as the late Mr. Justice Olney said in the leading case of *Werner* v. *Graham,* 181 Cal. 174, at page 183 [183 Pac. 945], that:

"It is undoubted that when the owner of a subdivided tract conveys the various parcels in the tract by deeds *containing appropriate language imposing restrictions on each parcel* as part of a general plan of restrictions common to all the

parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others. The agreement between the grantor and each grantee in such a case *as expressed in the instruments* between them is both that the parcel conveyed shall be subject to restrictions in accordance with the plan for the benefit of all the other parcels and also that all other parcels shall be subject to such restrictions for its benefit.''

The court says in the foregoing paragraph that to create mutual equitable servitudes in the nature of restrictions in the use of various subdivisions of a dominant tenement, which are enforcible by one who is not a direct party to the conveyance, the deeds must contain appropriate language ''expressed in the instruments'' clearly indicating that the restrictive covenant is for the benefit of not only the dominant tenement but also of all the other subdivisions thereof. It is not enough that the several deeds contain similar restrictive covenants if they fail to refer to the dominant tenement or state that the agreement is pursuant to a plan for the benefit of other designated portions of the tract. The last cited case declares, at page 181, that since such equitable servitudes are at variance with the recognized right of an owner of real property to enjoy the free and unrestricted use and control of his own land, such covenants should be strictly construed.

It will be observed that the complaint in intervention fails to quote the language of the covenants in question, and on the contrary the pleader merely purports to construe the meaning and application of the restrictions. It is true that the pleading does assert that the Sacramento Valley Colonization Company subdivided and conveyed to various purchasers portions of the Rancho Del Paso by deeds containing covenants that the land ''should not be used for cemetery, burial ground or crematory purposes''. But it neither alleges that the covenants declare they are intended for the benefit of other lots, nor that the restrictions are imposed in accordance with a subdivision plan to protect the tract against using the lots for cemetery purposes. In the absence of such direct allegations we must assume the deeds contained no such essential statements. For that reason the allegations of the complaint in intervention are fatally defective.

The complaint does recite that each deed declares that the restriction constitutes a "covenant running with the land". It is claimed that phrase is equivalent to the necessary declaration of an equitable servitude which is binding against all of the other lots of the tract. We think not. That statement is a mere conclusion which helps in no way to determine the extent or effect of the restrictions. There is no intimation in the deeds as to what lots or tract the covenant applies to beyond the land which is described in the particular deed. The mere use of that phrase is unavailing. Speaking of the ineffectual use of that very term, it is said in an article on the subject of Land Burdens in 10 Southern California Law Review, at page 283:

"A reading of the cases leads one to believe that persons charged with the responsibility of preparing *proper documents for the creation of restrictions* have acted upon the supposition that all will be well if a clause is inserted reading: 'These covenants are to be considered as covenants running with the land.' One might venture the guess that this phrase has been used by attorneys in many cases without any particular understanding as to the meaning to be attached to the words. It is at least a legalistic expression, *and if no litigation results* it will fulfill the purpose intended."

Finally, in a futile effort to meet the essential requirements of the law, the complaint concludes by stating that the covenants "were made and entered into for the benefit of all the lots contained in said tract". But it will be observed this is also a mere conclusion of the pleader regarding his construction of the restrictive clauses. It is not alleged that the deeds so state, probably for the very good reason that declaration is lacking in the instruments.

The insufficiency of the allegations of the complaint in that regard is conclusively determined in the leadng case of *Werner* v. *Graham, supra.* In that case one Mr. Marshall owned a tract of land which he subdivided into 132 lots, all of which he sold to various purchasers. He inserted covenants in each deed of conveyance specifically restricting the use of the demised lots to residential purposes, and prohibiting the maintenance of certain enterprises thereon. Like the present case, those deeds failed to refer to a general purpose of thereby benefiting the dominant tenement or portions of the

tract other than the particular lots described in such deeds. In selling the various lots Mr. Marshall represented to all prospective purchasers that he required each buyer to agree to the same restrictive covenant. The plaintiff, Werner, sought to quiet title to his lot against the restrictions of the several deeds. Marshall was not a party to the suit. Judgment was rendered against the plaintiff, holding that his deed was subject to the covenant on the theory that the general plan of the owner created mutual equitable servitudes affecting all of the lots in the tract, although that fact was not stated in the deeds. On appeal that judgment was reversed. The court said:

"The situation in this respect is that one, the owner of a tract of land, sells a portion of it, exacting of the grantee restrictive provisions as to its use, but without a word indicating that the land conveyed is part of a larger tract, the balance of which the grantor still retains, or that the restrictions are intended for the benefit of other lands, or that their benefit is to inure to or pass with other lands, and without any description or designation of what is an essential element of any such servitude as is claimed, namely, the land which is to be the dominant tenement. Servitudes running with the land in favor of one parcel and against another cannot be created in any such uncertain and indefinite fashion. It is true, the nature of the restrictions is such that, when considered in connection with the fact that Marshall still retained the greater portion of the tract, it is not improbable that he exacted them for the benefit of the portion so retained. *But the grantee's intent in this respect is necessary, as well as the grantor's, and the deed which constitutes the final and exclusive memorial of their joint intent, has not a word to that effect, nor anything whatever which can be seized upon and given construction as an expression of such intent. If such was their intent it has not been expressed.* Omitting, as we must, any consideration of what the understanding was between Marshall and his grantees, except as shown by the instruments between them, and construing the deed in the light of the fact that Marshall was at the time the owner of a large number of other lots in the tract, it may yet well be that the grantee intended to obligate himself only to Marshall, his heirs and assigns. Certainly, that is all that is said. *It is also difficult to see how there can be any*

*valid creation of what is practically a servitude without some designation or description of what is an essential factor, namely, the dominant tenement.''*

In the case of *Long* v. *Cramer Meat & Packing Co.*, 155 Cal. 402 [101 Pac. 297], a judgment determining that grantees of a portion of a larger tract took title subject to the covenant on the part of the grantor that they should enjoy the privilege in common of grazing their stock on the adjoining portion of the tract. On appeal the judgment was reversed. The late Mr. Justice Henshaw wrote the opinion. He said:

"No writing evidenced this agreement. . . . That the agreement thus found may not for a moment be considered as a covenant running with the land, is too plain to call for extended discussion. The obligation was not contained in a grant of an estate, nor in any other writing. . . . While attempting to impose a restriction upon the use of land, it is not created by deed, and if it were, it does not by its language attempt to bind the assigns or grantees of the covenantor. While it is true that, in a proper case, equity will enforce against the covenantor's grantee, a personal covenant imposing restrictions upon the use of land contained in the grant thereof (*Los Angeles etc. Co.* v. *Muir*, 136 Cal. 36 [68 Pac. 308]; Cyc., p. 1078), yet equity will do so only in a proper case, and would certainly withhold its hand where such a restriction is not imposed by grant, but is sought to be created by parol. The same is true of the attempt to erect out of this agreement some servitude.''

In the case of *Miles* v. *Clark*, 44 Cal. App. 539 [187 Pac. 167], upon which the appellant relies, building restrictions were included in each of the deeds conveying various portions of a subdivided tract, with the express statement therein that the covenants were to apply to and bind ''every lot in the tract for the benefit of every owner''. Those covenants were properly upheld for the reason that they clearly expressed the essential elements of an equitable servitude. In that case every deed was accepted by the various grantees with a clear warning that not only his land but every other portion of the tract was affected by the burden imposed by the restrictive covenant. In the present case that essential element is lacking. In that regard the Miles case is distinguishable from this action. Regarding the sufficiency of the language con-

tained in the reservations of the deeds in the Miles case the court says:

"The contract and the five deeds above referred to each sets forth in numbered paragraphs the conditions and restrictions which constitute the building scheme for the tract, . . . after which *each instrument contains a clause expressly making the restrictive covenants binding upon every lot in the tract for the benefit of every owner.*"

In none of the cases that have been called to our attention has it been held that the doctrine of equitable servitudes may be imposed on portions of a subdivided tract or lots other than those which are described in the deeds of conveyance, in the absence of declarations in the instrument itself or in some other duly executed contract of which the grantees have knowledge, clearly expressing the purpose and intent of the servitude to be imposed and designating the land to be affected thereby.

An excellent discussion of this principle and an elaborate review of the authorities may be found in 10 Southern California Law Review, page 281.

Section 1468 of the Civil Code also infers that a covenant in a deed creating a servitude for the benefit of other land must be "expressed" in the instrument. That section reads:

"A covenant made by the owner of land with the owner of other land to do or refrain from doing some act on his own land, *which doing or refraining is expressed to be for the benefit of the land of the covenantee,* and which is made by the covenantor expressly for his assigns or to the assigns of the covenantee, runs with both of such parcels of land."

██ It follows that unless the intention of applying a restrictive covenant to land other than that which is described in the deed to particularly described property is expressed in the instrument, or in some other executed document of which the grantee has knowledge, it may not be held the agreement, as a matter of law, "runs with the land", or that it is binding on the subdivisions of a tract which are not therein mentioned.

For the reason that the complaint fails to allege that the various portions of the subdivided tract are to be affected by the covenant, or that it was executed for the benefit of other lots than those which are described in the deed, the plead-

ing is fatally defective. The court, therefore, properly sustained the demurrer.

■ The intervener may not complain of a failure to permit him to amend his pleading since that request was not made. (*Buckley* v. *Howe*, 86 Cal. 596, 605 [25 Pac. 132]; *See* v. *Joughin*, 18 Cal. App. (2d) 414, 420 [64 Pac. (2d) 149].)

The judgment is affirmed.

Paulsen, J., *pro tem.*, and Pullen, P. J., concurred.