No. 38,361

In the Matter of the Estate of Mabel Furman Bump, Deceased, ILA LAVON BONNEY, Executrix, and FRANCES BUMP PARR, *Appellees,* v. GRACE BOYD WELSHANS and MARGIE I. BAUMAN, *Appellants.*

(233 P. 2d 478)

Opinion filed July 3, 1951.

L. M. *Kagey* and *Keith Eales,* both of Wichita, argued the cause, and *Max L. Hamilton,* of Wichita, was with them on the briefs for the appellants.

*Ben F. Alford,* of Wichita, argued the cause, and *I. H. Stearns,* of Wichita, was with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This appeal arises from an order made in connection with the final settlement of a decedent's estate construing the will of the testatrix and ordering distribution of the residue of the estate. For convenience the parties to the appeal, Ila Lavon Bonney, Frances Bump Parr, Grace Boyd Welshans and Margie I. Bauman, are hereafter referred to generally by their surnames.

The will of Mabel Furman Bump, which was duly admitted to probate, consisted of a series of unnumbered paragraphs in which she bequeathed articles of personal property and sums of money to certain named persons, the sums of money totaling $4,100. The will then provided:

"The property at #426 S. Main Street, is to be sold and after all cash bequests and bills are paid one half ½ of what is left is to go to my cousin, Grace Boyd Welshans of Los Angeles, Calif., and (½) one half to my cousin Margie I. Bauman of Los Angeles, Calif.

"If there is any other money left it is to be divided between Ila Lavon Bonney and my stepdaughter, Frances Bump Parr."

The inventory filed listed the real estate valued at $4,000; the household goods and jewelry specifically devised valued at $2,656; certificates of stock in a savings and loan association valued at $3,000 and cash in bank of $750.

Although we are not concerned directly therewith, on July 20, 1948, one Mary K. Hall filed a claim against the estate for personal services rendered. At some undisclosed date she died and her claim was revived in the probate court on March 2, 1949. In the meantime and on December 23, 1948, Welshans and Bauman filed their petition in the probate court asking that the above quoted portions of the will be construed, and thereupon the probate court made its order setting the hearing for January 26, 1949, and that notice be given to Mrs. Hall, Bonney and Parr by mailing a copy of the order to them at their regular addresses or by mailing a copy to their attorneys, and that was done.

The journal entry bearing thereon discloses that on June 20, 1949, the claim of Mary K. Hall came on for hearing, Mrs. Hall's estate appearing by attorney, the administratrix (executrix) appearing personally and by her attorney and Bauman and Welshans appearing by their attorneys; that proof in support of the claim and in defense against it was received and the hearing was continued to July 27, 1949, on which date the motion to construe the will was

also set for hearing; that on July 27, 1949, the claim again came on for hearing, the claimant administrator and his attorney being present and Bauman and Welshans being present by their attorneys; that claimant introduced further evidence to which Bauman and Welshans demurred and the matter was continued to August 5, 1949, "as to the claim of Mary K. Hall." The court further found as to the motion to construe the will that the first paragraph as quoted above gave all property including cash from the sale of real estate one-half to Welshans and one-half to Bauman, but in its order following it adjudged and decreed that *one-half* of all property remaining on hand and particularly all cash derived from the sale of the real estate after the payment of all bequests, court costs and other expenses of administration, be divided equally between Welshans and Bauman.

On February 24, 1950, Ila Lavon Bonney, the executrix, filed her petition for final settlement in which she prayed for an order of the probate court finding who was entitled to the estate and directing distribution.

On March 21, 1950, Welshans and Bauman filed their motion for an order nunc pro tunc to correct the order of August 5, 1949 (July 27, 1949?) to show that they were entitled to all of the property remaining on hand instead of only one-half.

The petition for final settlement and the motion for an order nunc pro tunc were heard on May 2, 1950, at which time the probate court found that the petition to construe the will was filed December 23, 1948, and set for hearing January 26, 1949, and that all parties were notified; that thereafter the matter was *orally* continued to March 2, 1949, and on that date was continued *indefinitely;* that Parr was not notified of any hearing date other than January 26, 1949, and was not present on August 5, 1949, when the order was made to which the motion for an order nunc pro tunc was directed. The probate court further found that the order made August 5, 1949, was irregular in that the court was under a mistaken impression as to what issues were presented and without being fully cognizant of the issues relative to the construction of the will, and that, having acted upon an erroneous understanding of the facts, found that the order of August 5, 1949, did not express the real purpose of the court and was erroneous and irregular, and—

"The Court after having the matter of the construction of said will fully presented upon the hearing of the motion for order nunc pro tunc, finds on

its own motion that said paragraphs of said will should be construed as follows, to-wit: That all of the cash bequests, bills and expenses should be paid from the proceeds from the sale of the real property located at 426 S. Main Street, and if the cash bequests, bills and expenses, including court costs, executrix's fees and attorney fees should exhaust said proceeds, then any other money should go to Ila Lavon Bonney and Frances Bump Parr."

The probate court, after making allowances to the executrix for her services and allowances to attorneys, continued the hearing as to other matters and issues in the petition for a final settlement.

In due time Welshans and Bauman perfected their appeal to the district court. A separate appeal by the executrix concerning her fees is noted but is not here involved.

In the district court it was stipulated that the probate court files in the estate of Mabel Furman Bump should be admitted as all of the evidence. That court, after considering those files and the briefs of the parties, affirmed and approved the judgment of the probate court excepting only the matter of attorney fees and rendered judgment accordingly.

From that judgment Welshans and Bauman perfected their appeal to this court.

Appellants contend that the district court, in affirming the orders and judgment of the probate court erred in two particulars: 1. In not holding that the probate court erred in attempting to construe the will at the time of final settlement on May 2, 1950, after the time had elapsed in which the probate court retained control of its judgment, order and decree of August 5, 1949, and 2. In not holding that if the probate court possessed power to construe the will on May 2, 1950, its decision was erroneous and that its judgment affirming and approving the judgment of the probate court was erroneous.

I

The gist of appellants' argument in support of their first contention of error is (1) that Bonney and Parr had notice of the hearing of appellants' petition for construction of the will set for January 26, 1949, and that all parties except Parr were then present when the hearing was orally continued until March 2, 1949, on which latter date it was continued indefinitely; that under *Herman v. Hawley*, 118 Kan. 17, 233 Pac. 1031, a party properly brought into court is chargeable with notice of all subsequent steps down to and including the judgment, although he does not in fact appear and has no actual notice thereof, and that they had to take notice of everything

subsequent to the notice originally given them, and (2) that under G. S. 1949, 59-2213, the probate court retained control of its order, judgment and decree for only thirty days, and that thereafter such order, judgment or decree could be vacated or modified only as provided by G. S. 1949, 60-3016, and that concededly, no effort was ever made to comply with the latter statute.

In our opinion the first part of the contention may not be sustained. There is no dispute that the petition of Welshans and Bauman was set for hearing on January 26, 1949, and that notice of such hearing was given; that on the day the hearing was set, it was orally continued to March 2, 1949, and when that day arrived the hearing was continued indefinitely. In the early case of *Gray v. Ulrich,* 8 Kan. 112, it was held:

"It is improper, after a case has been continued, to set aside the continuance and dispose of the case in the absence of one party and on the application and in favor of the other." (Syl. ¶ 2.)

There is no doubt that under the law ordinarily a continuance is not a matter of right, but may be on such conditions as the court may impose, a phase not presently before us. If a continuance is to a day certain, that day controls. But in the absence of an express stipulation a general order of continuance is treated as postponing the cause to the next term of the court. See 12 Am. Jur. 479, 17 C. J. S. 268. It is true that under our probate code terms are abolished (G. S. 1949, 59-211). Giving that consideration, a continuance generally and not to a fixed day, could only mean that the matter to be heard could not be heard in the absence of a mutual agreement of all parties to be present, or of some notice served by one side on the other and of compulsive nature. Our probate code contains many provisions for the giving of notice to adverse parties and it is inherent therein that unless notice is expressly not to be had, that it must be had unless waived. The general rule that a party to an action, upon whom service of process has been had, must take notice of subsequent proceedings, is not applicable to such a situation as is presently under consideration. Where, as here, an indefinite continuance was had, one party, without notice to or consent from the other, could not go into court in the absence of the other and obtain, in effect, a resetting of the proceeding, a trial thereon, and a judgment adverse and prejudicial to the rights of the nonappearing party. Such a judgment must be held to be void. Our conclusion renders it unnecessary that we treat the second subdivision of the appellants' first contention of error, that

we comment on the fact that their motion for an order nunc pro tunc discloses the order as made was not the judgment of the court, or that we discuss the general question whether parties interested in a testate estate may by proceedings for construction of a will anticipate, and by judgment rendered, preclude the probate court on the hearing of a petition for final settlement, from determining who are the heirs, legatees and devisees of the deceased testator, and assigning to them their interests in the estate. (See G. S. 1949, 59-2249.)

## II

Did the probate and district courts err in construing the will? We think it unnecessary to make an extensive review of our decisions wherein rules for construction of a will have been discussed. Most of those decisions may be found in West's Kansas Digest, Wills, §§ 435 to 491, and Hatcher's Kansas Digest, Wills, §§ 97 to 114. Those rules are summarized in *In re Estate of Porter*, 164 Kan. 92, 187 P. 2d 520, where it was said:

"However, it must be kept in mind that in constructing a will, courts are required to (*a*) arrive at the intention of the testator from an examination of the whole instrument, if consistent with rules of law, giving every single provision thereof a practicable operative effect, (*b*) uphold it if possible, (*c*) construe it to avoid intestacy when possible, (*d*) give all importance to the intention of the testator and (*e*) determine the intention of the testator when clearly and unequivocally expressed, without resort to rules of judicial construction applicable to the interpretation of an instrument which is uncertain, indefinite and ambiguous in its terms. (*In re Estate of Koellen*, 162 Kan. 395, 176 P. 2d 544; *In re Estate of Rinker*, 158 Kan. 406, 147 P. 2d 740; *Tomb v. Bardo*, 153 Kan. 766, 114 P. 2d 320; *Zabel v. Stewart*, 153 Kan. 272, 109 P. 2d 177; *Selzer v. Selzer*, 146 Kan. 273, 69 P. 2d 708.)" (l. c. 100.)

And see also *In re Estate of Ellertson*, 157 Kan. 492, 496, 142 P. 2d 724, not cited in the case above, where other authorities are collected.

An examination of the entire will, only a portion of which is quoted above, discloses that while perhaps another scrivener would have used other language, it is clear that the testatrix intended to and did bequeath to five of her relatives and friends specific articles of personal property, to four others specific articles of personal property and designated sums of money and to three others designated sums of money, the money bequests totaling $4,100. Following such dispositions was the language quoted earlier herein. We shall not set forth the arguments presented for and against the interpretation or construction placed on the will in the lower courts.

Stated shortly, the parties are in agreement that the testatrix had power under G. S. 1949, 59-1405, to charge her real estate with the payment of her debts or other items—the principal point of difference is whether by the language used, the testatrix charged the proceeds of the sale of her real estate with the expenses of administration. The statute last mentioned provides for the order in which assets of an estate are to be applied to the payment of debts of the testator and the lawful demands against his estate, but provides that "when a will designates the property to be appropriated for the payment of debts or other items, it shall be applied to such purpose" and that unless the will provides otherwise, the property subject to the payment of debts and other items shall be taken in the following order: 1. Personal property not disposed of by will. 2. Real property not disposed of by will. 3. Personal property bequeathed to the residuary legatee, and so on as provided in the statute. It will not be labored that where the testator attempts to designate property chargeable with payment of "debts and other items" the property will be charged only with the debts and other items he may designate and with no others.

It is clear from the language of the will that the testatrix intended that her personal property was to be relieved from primary liability for "all cash bequests and bills" and that she intended that the real estate be sold and the proceeds charged therewith, and that if any of such proceeds remained it was to be divided one-half to Welshans and one-half to Bauman. It is equally clear that having relieved her other property from any liability for payment of "all cash bequests and bills," she intended that whatever money was left thereof should go to Bonney and Parr.

It is not debatable but that the testatrix charged the proceeds of the sale of her described real estate with the payment of the money bequests. What was to be comprehended and included in "bills"? The word used was not used in any technical sense. Although the word "bill" is used as a noun referring to many different objects and things, as a reference to any standard dictionary will disclose, we are of the opinion that as used by the testatrix it had reference only to an account for goods sold, services rendered or work done and the charge therefor (see Webster's New International Dictionary, Second Ed., Bill 7) and that the testatrix intended no more than the debts owing by her at her decease and the expenses of her last illness and funeral should be paid out of the proceeds of the

described real estate and that she had no intention to charge those proceeds with the payment of the expenses and costs of administering her estate, including court costs and fees to the executrix for her services or for attorney fees.

Although some statements are made in the briefs as to the amount received for the real estate, the record as abstracted does not contain any showing as to the amount of moneys received from the sale of the real estate, any expenses of sale thereof properly chargeable thereto, any claims that may have been allowed, and which would be payable from such proceeds, nor as to any other money from other sources the executrix may have stood charged in the probate court, and we shall not comment thereon. We can only assume that the proceeds of the real estate were sufficient to pay the "cash bequests and bills" and leave some balance to be divided between Welshans and Bauman and that there is "other money" out of which to pay the costs of administration, including probate court costs and allowances to the executrix for her services and for attorney fees, any balance thereof to be paid to Bonney and Parr. Under the probate code if the "other money" is not sufficient for those purposes, the proceeds of the real estate would be applicable to such deficit as there might be. See the statute last mentioned.

The judgment of the district court affirming the judgment of the probate court construing the will is reversed, and the cause is remanded with instructions to the district court to set aside its judgment and to remand the cause to the probate court for further proceedings in accordance with this opinion.