[Civ. No. 17269.   First Dist., Div. Two.   Sept. 28, 1956.]

MILDRED TURNBOO et al., Appellants, v. COUNTY OF SANTA CLARA, Respondent.

Maurice L. Martin for Appellants.

Peter J. Mancuso for Respondent.

KAUFMAN, J.—This is an appeal from a judgment of the Superior Court of Santa Clara County in an action which was submitted to that court as an agreed case. The judgment decreed that reimbursement agreements executed by James E. Payne and his daughter, Vera King, created liens in favor of Santa Clara County upon the real property of each party at the time said liens were executed for welfare assistance that had been rendered to their respective spouses some years previously; and further, that said agreements constituted a waiver of the defense of the statute of limitations in regard to the debts for welfare assistance theretofore rendered to the spouses of the parties signing the agreements, as well as to the debts for aid to the parties themselves.

Plaintiffs and appellants, Mildred Turnboo, Hallie Payne and Vera King are the children of James E. Payne and Effie Payne, both deceased. Effie Payne died on December 4, 1950, at the county hospital of Santa Clara County. Services valued at $925 were rendered to her between November 1943 and the date of her death in said hospital. On or about November 5, 1952, James E. Payne entered the county hospital and on that date executed an "Agreement to Reimburse" which was recorded on November 12, 1952. Services were rendered to him in the sum of $179, and appellants concede that the agreement relates to this sum, and a claim for this latter sum has been paid by the estate of James E. Payne. The claim for $925 for services rendered by the county to Effie Payne was rejected.

The reimbursement agreement signed by James E. Payne reads as follows:

"I, James E. Payne do hereby acknowledge that I have received relief, care and maintenance and/or medical aid from the Board of Supervisors, County of Santa Clara, State of California (hereinafter called Promisee), and that I agree and intend to make reimbursement for this and all other aid and assistance rendered me during the period of my dependency.

"I do hereby waive the limitation of any statute for the presentation of any claim for the repayment of said relief, care and maintenance and/or medical aid.

"I do hereby agree that any and all monies so paid me by the promisee shall be secured by a lien on the following described property, or any and all other property that I may become seized of in the future; and in the event of my coming into possession of any funds or property of any kind, and if at time of my death I leave any estate whatsoever, I agree that said promisee shall be paid for all monies paid me for my relief, care, maintenance and medical aid, and my executor, administrator, or personal representative is directed to pay out of my said property and estate all of said monies paid me for my relief, care, maintenance and medical aid.

"The following is a true and correct description of all property, both real and personal, and all interest in property owned by me.

    Personal property (description)   None
    Real property (Legal Description)   475 Jerome Street,
                                   San Jose, California"

In 1942, James E. Payne and Effie Payne, as joint tenants, had purchased the real property located at 475 Jerome Street, San Jose, which was described in the reimbursement agreement which James Payne signed. Said joint tenancy was terminated on the death of Effie Payne. On January 11, 1954, James E. Payne deeded said property in joint tenancy to his children, the above named appellants, and a son, Elmer, who predeceased him.

Appellant, Vera King, had been married to Herbert Buttons prior to 1935, and was living with him until his death in May 1946. Between 1935 and his death in 1946, disbursements were made by the Welfare Department of Santa Clara County for indigent aid to the account of Herbert Buttons in the sum of $2,937.93. Prior to his death in May, 1946, services were rendered to Herbert Buttons by the county hospital in the sum of $90.50.

Ed and June Buttons were children of Herbert Buttons and Vera King. Ed Buttons reached majority on February 9, 1950. Prior thereto the county hospital had rendered services to him of a value of $17. Subsequent to that date he received services at said hospital valued at $71. County hospital services were rendered to June Buttons during her minority in the sum of $9.50.

On or about April 12, 1954, Vera King entered the county hospital where she received services of a value of $160.50. At that time she executed an agreement to reimburse identical in language to that signed by James E. Payne and set forth

above, except that the real property described therein was located at 3061 Wall Street, San Jose. Vera King admits that there is a lien against her property to the extent of $160.50 for hospital services rendered to her, personally.

Appellants contend that the reimbursement agreements herein can be considered a waiver of the statute of limitations only as to debts incurred for services rendered directly to the person signing the agreements. Each agreement states that "I . . . do hereby acknowledge that *I* have received relief . . . and/or medical aid . . . and that I agree and intend to make reimbursement for this and all other aid . . . rendered *me* during the period of *my* dependency." It continues: "I do hereby waive the limitation of any statute for the presentation of any claim for the repayment of *said* relief . . . and/or medical aid." Further, "I do hereby agree that . . . monies so paid *me* . . . shall be secured by a lien . . . I agree that said Promisee shall be paid for all monies paid *me* for *my* relief, care, maintenance and medical aid." (Emphasis ours.) Each of these agreements were signed by the respective parties when they were admitted to the county hospital for medical aid. There is nothing in the agreement that suggests that the party is waiving the statute of limitations in regard to any debts which he may owe the county for aid furnished to another person for whom he may be legally responsible. It has been a principle of welfare administration that aid is granted individually to meet the needs of the recipient, not the needs of the family as a whole or other members thereof. (See 42 Cal.L.Rev. 473). There is no faint suggestion in the language of these instruments that they covered any debt for relief received by any other member of the signer's family. Having entered the hospital at the time of signing the agreement, the party would have no reason to suspect that his acknowledgment extended to anything except this relief which had been extended and the medical aid and further relief that would be extended during the period of hospitalization and convalescence. No reasonable interpretation can extend this language to cover any debt that he may have owed the county in the past because of legal responsibility for relief furnished to a relative. It will be remembered that the spouses of both parties who had received the aid for which the county now claims reimbursement, were long since dead at the time these agreements were signed.

These agreements clearly waive the statute of limitations

for the aid incurred by the person signing and establish a lien for the aid then received and to be received and for any in the past they have personally received. But if these instruments are to cover other debts, then there should be embodied therein a clear reference to such debts. "Whether a writing contains a sufficient acknowledgment is a question of law, to be determined from the evidence and upon all the circumstances surrounding the transaction." (15 Cal.Jur. 584, § 179). Parol evidence is admissible if there is any uncertainty in a writing which is alleged to contain such an acknowledgment or new promise to pay. The agreements here appear without ambiguity to cover nothing but aid directly furnished to the persons signing them, and respondent has not offered any evidence of circumstances surrounding the execution of the instruments which might tend to expand the meaning of their terms, nor argued that they are ambiguous.

■ It is urged by respondent that section 2576 of the Welfare and Institutions Code creates a primary liability for aid furnished to a spouse or child. That section reads in part as follows:

"All aid rendered by the county under this chapter shall be a charge against the spouse, parent and adult child of the recipient thereof and the county rendering aid shall be entitled to reimbursement therefor.

"The board of supervisors of the county rendering aid shall determine if the spouse, parent or adult child, or any of them have financial ability to support or contribute to the support of the recipient and were *pecuniarily able to support or contribute to the support of the recipient during the time aid was rendered.* If in the opinion of the board of supervisors *pecuniary ability existed when the aid was given* and exists when the matter comes before the board of supervisors, the board shall request the district attorney or other civil legal officer of the county granting aid to proceed against *such responsible relative or relatives.*" (Emphasis ours.) While the first paragraph of the statute might appear to create a liability against certain relatives regardless of their financial ability to discharge it, the following paragraph demonstrates that the only named relatives *responsible* to the county for reimbursement are those who at the time aid was extended *then* had the ability to furnish some or all of such aid, and those who still have such ability when reimbursement is sought.

Respondent has argued that a liability to the county was created by certain sections of the Civil Code, apart from the provisions of the Welfare and Institutions Code. That the Welfare and Institutions Code is the only code to be looked to in this type of case has been finally determined in *County of San Bernardino* v. *Simmons*, 46 Cal.2d 394 [296 P.2d 329], where it is said that the Welfare and Institutions Code "is the measure of the extent of the responsible relative's liability to the county. It is to it we must look to ascertain whether the relative is required, in a particular case, to reimburse the county." The Supreme Court in that case also disapproved inconsistent implications in the cases of *Garcia* v. *Superior Court*, 45 Cal.App.2d 31 [113 P.2d 470]; *Kelley* v. *State Board of Social Welfare*, 82 Cal.App.2d 627 [186 P.2d 429]. The opinion also states that the Welfare and Institutions Code "purports to state the *circumstances in which the named responsible relatives are liable to the county* when it has supported or paid aid to indigents" and also states a "procedure by which in proper cases the county can recover from the responsible relatives." (Emphasis ours.) We agree with the footnote of page 401 of the cited case, that the system "although not altogether coherent, manifestly purports to cover the entire subject."

The only reasonable interpretation of section 2576, Welfare and Institutions Code, is that a liability to reimburse the county is created on the part of the named relative or relatives, when and only when, there was at the time aid was extended, an ability on the part of such relative or relatives to support or contribute to the support of the welfare recipient.

There is no allegation or evidence in this record that the Board of Supervisors of Santa Clara County ever made a finding that the parties who signed these agreements were able at the time aid was extended, to reimburse the county, nor is there any evidence in the record of the financial circumstances of these parties at that time. Section 2576 is very similar in content to section 2224, dealing with proceedings against a spouse or adult child able to support an old age applicant. In a discussion of the liability created by the latter section, one writer has said that "Civil Code section 206 creates a statutory support obligation which comes into existence when the governing conditions occur. A judicial determination is not a prerequisite, and, so far as the language of the section is concerned, judicial support orders

can be retroactive. Under the Welfare and Institutions Code on the contrary, liability of responsible relatives may not antedate an administrative finding by the board of supervisors.'' (42 Cal.L.Rev. 471-472.) There is in the present record no evidence nor finding that there was financial ability on the part of the parties here sought to be charged with the support of relatives at the time such support was rendered. There is therefore no proof that any debt to the county was owed by these persons for aid furnished to their spouses or children.

Respondent calls attention to section 2603 which provides that ''if a person *for the support of whom* public moneys have been expended *acquires* property, the county shall have a claim against *him* to the amount of a reasonable charge for moneys so expended . . .'' This section clearly applies to the *recipient* himself, not to the relatives who may be liable for his support. (*County of Los Angeles* v. *Security-First Nat. Bank,* 84 Cal.App.2d 575 [191 P.2d 78].) If the intent was to make the after-acquired property of responsible relatives subject to a lien, it would have been simple for the Legislature to have so provided.

It is our view, that the judgment must be reversed, first, because the language of the agreements clearly do not cover any debts except those for relief or medical aid incurred by the parties executing them; and second, that even had the language of the instruments been ambiguous and possibly subject to the interpretation that debts incurred because of a legal liability for certain relatives were thereby acknowledged, there is nothing in the record to support a finding that such a liability had arisen under section 2576 of the Welfare and Institutions Code.

Judgment reversed.

Nourse, P. J., and Draper, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.