[Civ. No. 9499.   Third Dist.   Jan. 7, 1959.]

LINCOLN E. DELL'ORTO, Respondent, v. CARL J. DELL'ORTO, Appellant.

Carl Dell'Orto, in pro. per., Atherton & Dozier and Mazzera, Snyder & DeMartini for Appellant.

Jones, Lane, Weaver & Daley for Respondent.

SCHOTTKY, J.—This is an appeal from a decree ordering specific performance of a written contract for the sale of real property and from an order directing partition by sale of other real property.  The issue of partition appears to have been abandoned because no reference is made to it by appellant.  Appellant Carl J. Dell'Orto and respondent Lincoln E.

Dell'Orto are brothers. Some years prior to the commencement of this action their father devised real property to Carl, Lincoln and a third brother, Earle. The three brothers had been attempting to reach an agreement for the division of the property. On Sunday, October 23, 1955, a meeting was held to discuss the matter. An offer was made by Carl to Lincoln. The next day Carl wrote a letter to Joseph S. Huberty, an attorney which read:

"Sunday evening a meeting at Earle's residence was held, attended by Lincoln and Earle and myself.

"He would not go for a division on the Hatcher line nor an offer for me to buy his interest in the ranch for 23,000.

"However, he was to consider:

"1st—to pay me 22,000 for my interest in the ranch, 800 acres, or 2d—23,000 for my interest in the 800 acre ranch and Lot 2 in Block 17,
or 3d—25,000 for all my interest in the 800 acre ranch—together with Lot 2 Block 17 and Lot 1 Block 1.

"As he has not accepted any of the plans I am withdrawing plan number 3, desiring to hold for my own use Lot 1 Block 1, however will go along with either plan Number 1 or 2, if he so chooses."

On October 25, 1955, Mr. Huberty had a conference with Lincoln and afterwards he wrote a letter to Carl on Lincoln's behalf in which Carl was advised that plan 2 was accepted. The letter concluded: "Please advise us as to how you would wish to have the matter concluded."

In April, 1956, Carl and Lincoln released their interest in certain property to Earle; and Earle, in turn, released his interest in other land to Carl and Lincoln. In April, 1957, Lincoln brought this action to compel specific performance of the alleged agreement to sell. Paragraph V of the complaint read: "That subsequent to said written agreement to purchase, the plaintiff tendered the purchase price thereunder to said defendant, and demanded a conveyance of said interest in said real property; that defendant has not executed a conveyance of title to said property, and has refused to sell and convey said interest in said property to the plaintiff; that the plaintiff is still ready and willing to pay the purchase money of the said property to the defendant and hereby tenders the same." This allegation was denied by Carl in his answer.

A pretrial conference was held and a pretrial conference order filed. So far as important upon this appeal, said order provides:

"The Court further finds and it is ordered that plaintiff's contentions are as follows:

"1. That plaintiff is entitled to specific performance of the contract alleged in the Complaint, . . .

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"The Court finds and it is ordered that defendant, Carl Dell'Orto's contentions are as follows:

"1. He concedes that an offer of sale was made, but contends that it was withdrawn before acceptance and that therefor there was no contract."

The cause then proceeded to trial. The defense was that no contract existed because the offer made on October 23, 1955, was for twenty-four hours only, that the offer had been revoked and that the acceptance which was to have been given to Earle was not proper. The trial court found:

" [T]he terms of said written offer and acceptance to be as follows: The defendant, Carl Dell'Orto, agreed to sell to the plaintiff for Twenty-three Thousand ($23,000.00) Dollars cash, his undivided one-half interest in the approximately 800 acre ranch formerly belonging to the father of said parties, and also his undivided one-half interest in Lot 2 Block 17 . . .; that plaintiff was to deposit said sum in cash in escrow in a responsible title company, or some other mutually agreeable escrow agent, to be delivered to the defendant Carl Dell'Orto in exchange for a grant deed from said defendant in good and sufficient form to convey his title therein to plaintiff, including all improvements, appurtenances, easements, and other hereditaments; that said defendant was to pay the costs of preparation of said deed, and one-half the fee of such escrow holder; that plaintiff was to pay all other costs in connection with said transfer."

Appellant Carl contends that the above finding is not supported by the record and that there was no meeting of minds and hence no contract. This argument is one which goes merely to the weight of conflicting evidence, for there was ample evidence to support the court's finding that plan 2 in appellant's offer was accepted by respondent. Indeed, this contention is only given brief mention in appellant's brief, and the principal contention urged by appellant is that Lincoln failed to prove: (1) that at the time of the commencement of the action he was ready, willing and able to perform, and (2) that he ever tendered the purchase price to Carl.

Respondent makes two answers to this contention. He first contends that formal tender of the purchase price is excused

by the seller's repudiation of the contract of sale. He points out that in the acceptance letter the following appeared: "Please advise us as to how you would wish the matter concluded." Mr. Huberty testified that this meant that Carl was to advise them how he wanted the matter closed, i.e., where the money should be paid and where the deed would be delivered. Respondent also points out that the record shows appellant repudiated the contract shortly after it was entered into, and that throughout the litigation the defendant has taken the consistent position that there was no contract either because the time limit in the offer had expired or the offer was revoked before acceptance.

Respondent quotes from the case of *Ray Thomas, Inc.* v. *Cowan*, 99 Cal.App. 140, at page 146 [277 P. 1086]:

". . . The law is well settled that where a vendor repudiates the terms of a contract and indicates that he will be no longer bound thereby, a further tender of performance before beginning suit by the vendee is unnecessary. In support of this we may refer to the long list of cases cited in a note appended to the case of *Bateman* v. *Hopkins*, as reported in Ann.Cas. 1913C, pages 642-648, being a case also reported in 157 N.C. 470 [73 S.E. 133]. To the same effect is the rule cited in 23 Cal.Jur., page 499; see, also, *Buckmaster* v. *Bertram*, 186 Cal. 673 [200 P. 610]. Where the vendor has absolutely repudiated his agreement to sell, it is sufficient, on the part of the vendee, to set forth in his complaint that he is ready, willing and able to perform his part of the contract. Such appears to be the case at bar. The complaint contains the necessary allegations which was followed by the necessary proof introduced upon the trial. . . ."

Respondent also cites *Beverage* v. *Canton Placer Min. Co.*, 43 Cal.2d 769 [278 P.2d 694], where the court said at page 777:

"Defendants further contend that plaintiffs are not entitled to a decree of specific performance because of their failure to allege payment or tender of the balance of the purchase price, a condition precedent to plaintiffs' right to demand its conveyance. They rely on the rule that 'to entitle a party to specific performance, he must have (a) performed, (b) offered to have performed, or (c) proved a sufficient excuse for not performing, all the conditions required by him' by the agreement. (*Reyburn* v. *Young*, 11 Cal.App.2d 476, 477 [54 P.2d 87]; Civ. Code, § 3392.) However, where a vendor repudiates a contract and indicates that he is not bound

thereby, a tender is unnecessary. (*Ray Thomas, Inc.* v. *Cowan*, 99 Cal.App. 140, 146 [277 P. 1086].) While the language of the complaint seems to preclude an allegation of tender, it is not inconsistent with an allegation of repudiation of the contract by the defendant company as vendor. Thus, plaintiffs alleged the company's continued refusal to execute a conveyance of the property despite plaintiffs' repeated demands therefor, and that plaintiffs stand 'ready, willing and able' to pay the balance due. The law does not require the performance of an idle act, and a formal tender of performance is excused by the refusal in advance of the party to accept the performance owing. (Civ. Code, §§ 1440, 1511, 3532; *Woods-Drury, Inc.* v. *Superior Court*, 18 Cal.App.2d 340, 348 [63 P.2d 1184].)''

Respondent's second answer to appellant's contention that respondent failed to prove that at the time of the commencement of the action he was ready, willing and able to perform or that he ever tendered the purchase price to appellant is that no issue was raised at the pretrial conference as to tender or ability to pay on the part of the respondent and that this was not considered one of the matters at issue during the actual trial. He points to the pretrial conference order, hereinbefore quoted, and cites rule 8.8 of Rules Relating to Pretrial Conferences, which reads: ''When filed, the pre-trial conference order becomes a part of the record in the case and, where inconsistent with the pleadings, controls the subsequent course of the case unless modified at or before trial to prevent manifest injustice . . .''

We agree with respondent that the issues of ability to perform and tender were not raised at the pretrial conference and were not listed in the pretrial conference order as issues. What was said in *Baird* v. *Hodson*, 161 Cal.App.2d 687, at pages 689-690 [327 P.2d 215], is applicable:

''A review of legal history reveals innumerable rules, regulations, laws and processes introduced into the law by which there is a more efficient and effective handling of cases. In each instance not only was it necessary, but progress in the law demanded it. Another of such progressive steps is now part of California law, which may be referred to as pretrial procedure. A review of the rules for pretrials clearly reveals the reasons behind them. Obviously, the rules were designed to relieve the members of the legal profession and the members of the judiciary from legal technicalities, trivia, details, unessentials, and to have the case tried at an early date

upon the real and substantial issues in the case. This is a most laudable and meritorious purpose. In *Hickman* v. *Taylor*, 329 U.S 495 [67 S.Ct. 385, 388, 91 L.Ed. 451], in discussing federal court pretrial, it is said:

" 'The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pretrial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.'

"To satisfy the purposes and obtain the full effectiveness of pretrial procedures it is necessary not only that the practitioner observe the rules, but that the courts observe them. In the instant case, the pretrial conference order reflects the contention made by all parties to the action and definitely and numerically sets forth the 'Issues' as ' (1) The dates of execution and the due delivery of the documents in evidence, and (2) whether or not the document Exhibit 2 is an option or an offer to purchase.' Further, the order states: 'All discovery proceedings are complete, and the issues are joined.' No action was taken by defendant as allowed to him under rule 8.7(b).

"This pretrial conference order then controlled the subsequent course of the case in accordance with rule 8.8 and the issues raised by the pleadings were superseded. The pretrial judge, the trial judge and plaintiffs had the right to rely upon that posture of the case. Particularly is this true because defendant did not request a modification of the pretrial conference order, which he had a right to request under rule 8.7."

The rules as to pretrial procedure adopted by the Judicial Council provide that each party "shall be prepared to state orally the factual and legal contentions to be made as to the issues remaining in dispute" (8.2), and rule 8.6(a) provides: "The pre-trial conference judge shall prepare and sign a pre-trial conference order . . . This order shall contain: (1) A concise and descriptive statement of: . . . (iii) the factual and legal contentions made by each party as to the issues remaining in dispute; . . ."

As hereinbefore set forth, rule 8.8 provides that the pretrial order controls where inconsistent with the pleadings unless modified at or before the trial, and in the instant case appellant made no request for a modification of the pretrial conference order. We, therefore, conclude that the issues of ability to perform and tender, not being raised at the pretrial conference, and not being listed in the pretrial conference order as issues remaining in dispute, were no longer issues in the case. To hold otherwise would, in our opinion, not be in conformity with either the letter or the spirit of the Rules Relating to Pretrial Conferences.

No other points raised require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 4, 1959.