[Civ. No. 6093. Fourth Dist. Mar. 17, 1961.]

COUNTY OF KINGS, Appellant, v. ALLIE MAE SCOTT
et al., Respondents.

Charles F. Leach, District Attorney, and Howard J. Ridley, Assistant District Attorney, for Appellant.

Daniel M. Fadenrecht and Fred L. Johnston, Jr., for Respondents.

GRIFFIN, P. J.—On June 17, 1957, plaintiff and appellant, county of Kings, filed an action against defendants and respondents, Allie Mae Scott (hereinafter referred to as defendant) ; Mary Sweeney, guardian of the estate of Allie Mae Scott, an incompetent person; and Charles W. Puckett; alleging that the defendant Allie Mae Scott was indebted to, and would become further indebted to the plaintiff on account of hospital care rendered and to be rendered by the plaintiff to the defendant at the request of the defendant. The complaint alleged that on August 15, 1955, defendant owned certain real property; that on or about September 19, 1956, she conveyed it to defendant Puckett; that said conveyance was without consideration and rendered defendant Scott insolvent. Plaintiff prayed for judgment against defendant Scott and Mary Sweeney, as guardian of Allie Mae Scott, and asked that the conveyance to Puckett be set aside and that

the property be impressed with a lien to secure the repayment of the amount due for said hospital care. On January 28, 1958, defendant Puckett filed an answer denying that defendant Scott was indebted to the plaintiff and denying that the property was conveyed without consideration or that said conveyance rendered her insolvent. On June 6, defendant Sweeney, as guardian, filed an answer and denied that defendant Scott was indebted to the plaintiff and denied that any indebtedness would be incurred.

In the pretrial statement and order made on December 8, 1958, certain facts were agreed upon, to wit, that Allie Mae Scott had owned certain described real property; that on September 19, 1956, she conveyed this property to Charles Puckett by gift deed; that at the time of the execution of the deed she "had incurred a bill with the County of Kings for hospitalization in the General Hospital which had not been paid; that subsequent to September 19, 1956, Allie Mae Scott incurred a further bill with the County of Kings for hospitalization in the General Hospital and that the total amount now due for said hospitalization is $4,222.35" (subsequently changed by stipulation to $4,954.35); that Puckett "denies that Allie Mae Scott was incompetent at the time of the execution of said deed . . . denies that said deed was obtained by any fraudulent representation made by Charles W. Puckett . . . denies any confidential relationship with Allie Mae Scott and denies that he agreed to care and support Allie Mae Scott for the rest of her life in consideration of the making of said deed . . . denies that said deed was executed without consideration." The pretrial order stated that the issues to be determined in these consolidated actions are: (1) Was said deed obtained by fraud? (2) Was defendant Puckett in a confidential relationship with defendant Scott? (3) Was defendant Scott incompetent at the time? (4) Was the deed executed without consideration? (5) As a matter of law, was the county of Kings, on the date of execution of the deed, a creditor of Allie Mae Scott and entitled to file suit to set aside this deed?

After trial, the court found in favor of defendants and entered judgment accordingly. Plaintiff appealed.

It appears that in an independent action between Allie Mae Scott, through her guardian, versus Puckett, Case No. 14120, tried simultaneously with this action, the same court found Mrs. Scott to be incompetent at the time of the execution of the deed to Puckett and set it aside, and title was restored

to her, conditioned on reimbursement for a small sum of money paid out by Puckett. There is no record in this court of any appeal and we will assume that the judgment in this independent action has become final and that the deed was set aside and the property restored to the ward's estate.

The evidence presented at the trial established that defendant Scott, from April 14, 1955 to April 25, 1955, and from August 15, 1955 to September 2, 1958, received care and treatment at the Kings County Hospital. During part of this time, she was receiving Old Age Security payments which were made payable directly to the hospital and were credited to her hospital account. On January 31, 1957, she was removed from the Old Age Security rolls and again restored on June 1, 1958, and certain payments were again made and credited as indicated.

Plaintiff argues that the principal question presented upon this appeal is whether the defendant Scott has a legal duty and obligation to reimburse or pay the plaintiff county for the care and treatment rendered to said defendant at her request by said plaintiff at the Kings County Hospital.

Plaintiff, in support of its contention, now argues that under Welfare and Institutions Code, section 203.5, it was entitled to judgment against defendant Scott, since at the pretrial conference it was agreed that a charge had been fixed and imposed by the board of supervisors of Kings County against her for hospitalization. It is contended that this is a necessary inference from the wording of the pretrial order and agreement and stipulations of facts contained therein. Appellant points out that no other evidence as to Scott's liability for the value of the services was received at the trial and that the pretrial order controls the subsequent course of the case unless modified at or before trial. Appellant also argues that the pretrial stipulation of facts supersedes the issues raised by the pleadings. (Citing such authority as *City of Los Angeles* v. *County of Mono,* 51 Cal.2d 843, 847 [337 P.2d 465]; *Dell'Orto* v. *Dell'Orto,* 166 Cal.App.2d 825, 829 [334 P.2d 97]; *Baird* v. *Hodson,* 161 Cal.App.2d 687, 691 [327 P.2d 215]; rules 8.6 and 8.8, Rules for Superior Courts.) Compare rule number 16, Federal Rules of Civil Procedure.

It is defendants' contention on this appeal that plaintiff county was not a creditor of defendant Scott so as to entitle it to a judgment against her.

Defendants also contend that there is no evidence that the County of Kings had established a policy as to the amount of

property that the respondent was permitted to have while receiving public assistance, and that the right of the county to bring this action against defendant Scott is conditioned on the establishment of such policy (citing such authority as *Turnboo* v. *County of Santa Clara,* 144 Cal.App.2d 728 [301 P.2d 992] and *County of Los Angeles* v. *Security First Nat. Bank,* 84 Cal.App.2d 575 [191 P.2d 78]); that since the county did not require a transfer of this property or a lien against it as security for the repayment of the hospitalization charged, defendant Scott had no legal obligation or duty to reimburse the county for it.

Plaintiff argues that Welfare and Institutions Code, sections 2600 and 2601, do not authorize such a construction and argues that requiring a transfer of property or a lien thereon as a condition for granting indigent aid is not an exclusive remedy for the purpose of enforcing the obligation of the recipient of indigent aid to reimburse the county for aid granted, and that no administrative action by the board of supervisors is necessary before a recipient of indigent aid becomes obligated to reimburse the county for aid rendered where no transfer of property or lien thereon has been required prior to granting aid.

The trial judge, in a lengthy written memorandum opinion, set forth the evidence in more detail and stated that "The County's position is that it is a creditor of Mrs. Scott, that the conveyance to Mr. Puckett was without a fair or any consideration, that it rendered her insolvent, and that the County as a creditor is entitled to have the conveyance set aside under the provisions of the Fraudulent Conveyance Act" (Civ. Code, §§ 3439.01 to 3439.12, inclusive); that "Puckett contends that under the facts here presented there is no legal duty or obligation on the part of Mrs. Scott to repay the indigent aid received by her; that therefore the County is not a creditor and cannot maintain the action" and that Puckett concedes that "during the time Mrs. Scott held title to the property and was receiving indigent aid the Board of Supervisors as a condition to the grant or continuation of such aid could have required as security for the moneys so expended a deed to or lien upon the property" under Welfare and Institutions Code, section 2601, but states that no such action was taken.

The court then states that at the trial counsel for plaintiff remarked that "the County is not seeking a personal judgment against anyone." Although some statement may

have been made, counsel for plaintiff, in his brief, denies that any such statement, if made, constituted a concession or stipulation. We find no reported record of such statement and no compliance with Code of Civil Procedure, section 283. See also *Smith* v. *Whittier*, 95 Cal. 279, 288 [30 P. 529] and *Webster* v. *Webster*, 216 Cal. 485, 490 [14 P.2d 522]. Accordingly, in view of the record, this statement of the trial judge and a similar statement in the findings are lacking in evidentiary support, do not amount to a consent judgment in favor of Mrs. Scott or the guardian, as claimed by them and must be disregarded for the purpose of this decision. (*Grant Memorial Park* v. *Robla School Dist.*, 33 Cal.App.2d 528, 531 [92 P.2d 499].)

The court also stated and found that there was *no evidence* presented that the board of supervisors of Kings County had taken any action prior to September 19, 1956, by way of establishing a policy with reference to the amount of property, if any, a person receiving indigent aid may be permitted to have while receiving such indigent aid, and the extent to which a person such as Mrs. Scott should have been required to apply her own property to her support, and, accordingly, the county was not, at the time, a creditor of Mrs. Scott within the meaning of Welfare and Institutions Code, section 2600, and its related sections, and, accordingly, plaintiff was not entitled to a personal judgment against Mrs. Scott or the guardian of her estate.

Whether the prior adoption of such policy by the board of supervisors was a necessary prerequisite to bringing an action of this character under the circumstances related is open to question. See *Turnboo* v. *County of Santa Clara, supra,* 144 Cal.App.2d 728; *County of Los Angeles* v. *Security First Nat. Bank, supra,* 84 Cal.App.2d 575; *County of Alameda* v. *Janssen,* 16 Cal.2d 276, 283 [106 P.2d 11, 130 A.L.R. 1141]; which are relied upon by defendants and the trial court. Plaintiff argues that Welfare and Institutions Code, section 203.5, *supra,* authorizes a county to charge patients admitted to the county hospital for hospitalization and medical care rendered and authorizes the collection of such hospital charges from the patient. (Citing *Talley* v. *Northern San Diego Hospital Dist.,* 41 Cal.2d 33, 39 [257 P.2d 22]; *Madison* v. *City & County of San Francisco,* 106 Cal.App.2d 232, 243 [234 P.2d 995, 236 P.2d 141]; *County of Santa Clara* v. *Robbiano,* 180 Cal.App.2d 845, 849 [5 Cal.Rptr. 19].) Also cited are

13 Opinions, Attorney General 216-224, 254-256; 8 Opinions, Attorney General 246-248, indicating that a legal duty has been imposed upon indigents to repay any general relief received by them including the duty to repay costs of hospitalization in the county hospitals.

 From the record before us, there was no issue presented under the pretrial order as to whether the county had or had not adopted a policy under Welfare and Institutions Code, section 2600, and no evidence was produced on the subject. The pretrial order and agreement of fact does show that Mrs. Scott "incurred a bill" with the county of Kings for hospitalization in the general hospital of that county and subsequently "incurred" a further bill for such purpose and the "total amount now due" is $4,222.35, subsequently changed to $4,954.35, and the agreement recites that the only remaining issues were whether Puckett obtained the deed by fraud, whether a confidential relationship existed between him and Mrs. Scott, whether she was incompetent, whether, as between them, there was sufficient consideration, and whether the county, on the date of the execution of the deed, was a creditor of Mrs. Scott and entitled to file suit to set aside the deed. As will be noticed, no claim is made that Mrs. Scott or her guardian are raising the question of whether the board of supervisors previously established a policy as provided in Welfare and Institutions Code, section 2600.

Under the theory adopted by the trial judge that no recovery could be had against Mrs. Scott or the guardian if such a policy had not been previously adopted, no indebtedness would be incurred by Mrs. Scott. The agreed facts do not support this conclusion. The phrases "had incurred a bill" and "incurred a further bill" and the statement that said sum is "now due" can only mean that the County of Kings had fixed and imposed a charge against Mrs. Scott for hospitalization. Furthermore, by the stipulation changing the amount on the pretrial order, it contained the language that this "is the amount of the indebtedness to Kings County." The word "incurred," when used in connection with bills or expenses, means to become liable for and to have liability thrust upon one by act or operation of law. (*Bartlett* v. *Vanover,* 260 Ky. 839 [86 S.W.2d 1020, 1021]; *Sorenson* v. *Overland Corp.,* 142 F.Supp. 354, 361; *United States* v. *St. Paul Mercury Indemnity Co.,* 238 F.2d 594, 598; *Weinberg Co.* v. *Heller,* 73 Cal.App. 769, 780 [239 P. 358].) The word

"bill" in its ordinary, primary meaning, means accounts for goods sold, services rendered or work done. (*In re Bump's Estate*, 171 Kan. 442 [233 P.2d 478, 483]; *Newman* v. *San Antonio Traction Co.*, (Tex. Civ. App.) 155 S.W. 688, 690; Civ. Code, § 3439.01.)

In construing the effect of the pretrial conference order, the California courts have held that the pretrial order supersedes the issues raised by the pleadings and controls the subsequent course of the case (*City of Los Angeles* v. *County of Mono, supra*, 51 Cal.2d 843, 847) and where issues were not raised at the pretrial conference or listed in the pretrial conference order as issues remaining in dispute, they were no longer issues in the case. (*Dell'Orto* v. *Dell'Orto, supra*, 166 Cal.App.2d 825, 829-831.) In *Baird* v. *Hodson, supra*, 161 Cal.App.2d 687, 691, the court held, quoting from *Johnson* v. *Glassley*, 118 Ind. App. 704 [83 N.E.2d 488], as follows: "The subsequent course of an action is controlled by agreements made at pre-trial conference so long as they remain unmodified."

No application was here made to modify the agreement or pretrial order and therefore the defendant Scott is bound by the agreed statement of fact contained therein concerning the incurring of a bill at the Kings County Hospital for hospitalization and the statement that the amount of said bill is due. Nothing contained in such agreed statement of fact can be raised as an issue on appeal. (*Baird* v. *Hodson, supra*, 161 Cal.App.2d 687.)

We therefore conclude that under the facts here admitted and shown, the judgment in favor of Allie Mae Scott and Mary Sweeney, as guardian of the estate of Allie Mae Scott, an incompetent person, should be reversed with directions to enter judgment against them in the sum of $4,954.35.

There is no personal liability as to defendant Mary Sweeney as guardian of the estate of Allie Mae Scott, and, accordingly, the judgment rendered against her must be limited to her official capacity as such guardian. (*Sturgis* v. *Sturgis*, 51 Ore. 10 [93 P. 696, 21 A.L.R. 908]; *Sullivan* v. *Barra*, 22 Cal.App.2d 20, 23 [70 P.2d 495]; *Estate of Cochems*, 110 Cal.App.2d 27, 30 [242 P.2d 56]; *Johnston* v. *Long*, 30 Cal.2d 54 [181 P.2d 645].)

Since the trial court's judgment in the companion action set aside the conveyance here involved, plaintiff's prayer for a judgment also setting it aside in the instant action would not give plaintiff any greater rights. The trial court was

justified in refusing such additional relief as against defendant Puckett and the judgment in his favor should be affirmed.

Judgment in favor of defendants Allie Mae Scott and Mary Sweeney, as guardian of her person and estate, is reversed and the trial court is directed to enter judgment against Allie Mae Scott individually and Mary Sweeney in her representative capacity as guardian. Judgment in favor of defendant Charles W. Puckett affirmed.

Plaintiff to recover its costs on appeal against defendant Allie Mae Scott. Defendant Puckett to bear own costs.

Shepard, J., and Coughlin, J., concurred.